Argued August 16, affirmed September 12, reconsideration denied
October 19, 1977, petition for review denied January 24, 1978

STATE OF OREGON, *Respondent,*
*v.*
ROBERT HARLAND WAMPLER, *Appellant.*
(No. 93193, CA 6228)
569 P2d 46

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

[ 932 ]

W. Michael Gillette, Solicitor General, Salem, argued the cause for respondent. With him on the brief was James A. Redden, Attorney General, Salem.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

## TANZER, J.

In a lengthy and well-publicized trial, defendant was convicted of the murder of Superintendent Holly Holcomb of the Oregon State Police. He appeals contending that the trial court erred in denying his motion for change of venue and in denying his motions for mistrial which were made on various grounds throughout the trial. He also argues that the trial court erred in permitting the state to introduce videotapes of two of his psychiatric examinations.

Defendant is a former member of the Oregon State Police. In 1958, Holcomb, who was then a supervising officer in defendant's unit, initiated a disciplinary proceeding against defendant which ultimately resulted in his dismissal from the force. Defendant felt that he had been unjustly discharged because of his criticism of the senior officers within the force and because of his opposition to their policies.

Seventeen years later, on the morning of November 24, 1975, defendant approached Holcomb in front of the State Police headquarters in Salem as he arrived at work and asked to speak with him. Heated words were spoken. Several persons were about to intercede in the argument when two shots were fired and Holcomb fell, fatally wounded.

There was overwhelming direct and circumstantial evidence that defendant was the assailant and, from the outset, defense counsel conceded that fact to the jury. The only substantial issue at trial was defendant's state of mind at the time of the shooting.

Defendant contends that the trial court should have granted his motion for change of venue because the news coverage of the shooting and of defendant's subsequent arrest was so extensive in the Salem area that it presumptively deprived him of a fair trial by an impartial jury. He points out that local news coverage of the crime included 22 articles in Salem's two major newspapers within ten days of the shooting and he

[ 933 ]

makes much of the fact that those stories strongly suggested that defendant killed Holcomb.

Motions for change of venue are addressed to the sound discretion of the trial court. *State v. Little,* 249 Or 297, 312, 431 P2d 810 (1967) *cert den* 390 US 955 (1968). We cannot say that the press coverage of the crime in the Salem area was so pervasive and so biased against defendant that it was an abuse of discretion to deny a change of venue in this case. The fact that the press reportage suggested what the defendant admitted, i.e., that he shot Holcomb, did not contribute significantly to a community bias against defendant, if any there was, which made unlikely the possibility of seating a fair and impartial jury.

Six of defendant's seven remaining assignments of error relate to the trial court's denial of defense motions for mistrial. Motions for mistrial are also addressed to the sound discretion of the trial court and we will not reverse an order denying such a motion unless we can say, beyond reasonable dispute, that the trial court abused its discretion by tolerating uninvited prejudice. *State v. Stanley,* 30 Or App 33, 36, 566 P2d 193 (1977).

Defendant's first motion for mistrial was based upon the fact that the trial court permitted members of the press, including artists, to be seated in the first row of the courtroom, and to use television cameras and lights in the hallway outside the courtroom. Defendant contends that this was distracting to the jury, that it emphasized the importance of the case and that it was therefore prejudicial to defendant. We see no basis for defendant's inference that the activities complained of created a "probability of prejudice" to defendant. *Estes v. Texas,* 381 US 532, 542, 85 S Ct 1628, 14 L Ed 2d 543 (1965). The visibility of the press implied to the jury what they must already have known: there is high public interest in a trial arising from the killing of a prominent state official. The trial court reasonably exercised its discretion to conduct the

trial in an orderly manner which it deemed appropriate, *State v. Gann,* 254 Or 549, 563 P2d 570 (1969), and it struck a reasonable balance between the rights of the press and the rights of defendant. *Estes v. Texas, supra.* Therefore the motion for mistrial was properly denied.[1]

■ Defendant's other motions for mistrial were based upon statements made by the prosecutor, or by prosecution witnesses, on voir dire and during the course of the trial. Typical of these was the following comment by the prosecutor during voir dire:

> "Now the statute may require the judge to give a life sentence for murder, but it doesn't mean that he stays for that length of time. It means that's the sentence imposed. The parole board can let him out the next day or at any other time. * * *"

Such a comment was inappropriate and should not have been made. However, here, the comment was made in response to numerous equally improper statements by defense counsel to the effect that defendant was facing a mandatory sentence of life imprisonment. Inasmuch as the prosecutor's comment was invited by misleading appeals by defense counsel for the jury's sympathy, denial of the motion for mistrial was not an abuse of discretion. *See, State v. Stanley,* 30 Or App 33, 566 P2d 193 (1977); *State v. Sandersfeld,* 26 Or App 173, 552 P2d 598 (1976).

■ The other statements complained of by defendant were similarly invited. Moreover, the trial court exercised great care to see that the jury was properly instructed on the law and, insofar as it was able, the court maintained the jury's focus on the relevant decisional issue. In short, all the error which defendant claims should have resulted in a mistrial was either invited by the improper conduct of defense

---

[1]As a separate ground for the same motion for mistrial defendant complains of the use of a metal detector to screen all people other than jurors who entered the courtroom. Such a procedure was a reasonable safety precaution under the circumstances. *Cf., Illinois v. Allen,* 397 US 337, 90 S Ct 1057, 25 L Ed 2d 353 (1970).

counsel or nonprejudical or both. We therefore affirm the trial court's denial of the mistrial motions.

■ Finally, defendant contends that the trial court erred in permitting the prosecution to introduce two videotapes of defendant's psychiatric examinations. The tapes were made at defendant's request to assist the psychiatrists in their diagnoses of defendant's mental condition. The prosecution initially objected to the making of the videotapes. The trial court did not rule on the admissibility of the tapes until they were offered at trial by the prosecution. Defendant argues that because the state initially opposed the making of the tapes, it should have been estopped from offering them into evidence. We are aware of no such rule; we perceive no valid reason for adopting such a theory and we decline to do so.

■ Defendant also contends that the videotapes were inadmissible for the following reasons: defendant was not given *Miranda* warnings prior to the commencement of the examinations; the psychiatrists questioned defendant about his exercise of his *Miranda* rights shortly after the murder; and had defendant known that the videotapes would be admitted at trial, he may have exercised his right to have counsel present and his right not to respond to questions concerning the criminal event.

In view of the fact that defendant admitted the shooting at trial, that the interviews were conducted and videotaped at the behest of defense counsel, and that defense counsel was fully aware that he could be present at the examinations and that his client could decline to answer questions regarding the shooting, we hold that the videotapes were not rendered inadmissible on any of these grounds. *See, State v. Smallwood,* 277 Or 503, 561 P2d 600 (1977); *State v. Eichenberger,* 25 Or App 507, 549 P2d 1300 (1976).

Affirmed.