*[1197]
 
 JOSEPH, J.
 

 Defendant appeals from the judgment on his conviction on all counts of an indictment charging him with rape, sodomy (two counts) and kidnapping. Defendant was sentenced to 20 years for rape in the first degree (ORS 163.375), to be followed by two 20-year concurrent sentences on the two counts of sodomy in the first degree (ORS 163.405), to be followed by 10 years for kidnapping in the second degree (ORS 163.235).
 

 The charges arose from an incident which occurred dining the early morning hours of July 8, 1976. The victim, a young woman, was sleeping alone in an upstairs bedroom at her boyfriend’s house, where she had remained following a party which began on the evening of July 7. She awoke and saw a man sitting on the edge of her bed. She tried to make him leave, and twice he did leave the room. Both times he returned. Following his second return the man threatened "to blow her head off,” struck her and forced her to have sexual intercourse with him. Subsequently he subjected her also to anal and oral intercourse. At some point he bit the complainant on the breast. Finally, he made the complainant put on her clothes and go downstairs and out to a car parked nearby.
 

 On the way out of the house, he grabbed a towel from the bathroom; when they reached the car he opened the door and threw the towel in. As he did that, the claimant broke away and ran. After she tried unsuccessfully to break into a nearby store for shelter, her assailant caught up with her. As he attempted to drag her back to the car, several people in the neighborhood responded to her screams and came to her aid. One man hit the assailant in the chest with a baseball bat. The complainant escaped into a nearby apartment, and her assailant fled. Defendant was arrested six days later.
 

 Defendant first assigns as error the refusal of the trial court to grant his motions for acquittal based
 
 *[1198]
 
 upon insufficiency of the evidence. There was evidence that defendant was at the party at complainant’s boyfriend’s house on the evening of July 7, that he left the party and that he returned with friends just prior to the time when the alleged crimes occurred. There was also testimony that his friends left the house without him shortly thereafter and that he locked the front door behind them. The complainant identified defendant as her assailant both in a photographic throwdown and in court. Two of the neighbors who had come to her aid also identified defendant in court as the man with whom complainant had struggled. Complainant identified defendant’s car as the one to which she had been led, and her boyfriend identified a towel found in defendant’s car as one belonging to his roommate in the house. A dentist testified that a bite mark found on complainant’s breast, though faint, was similar to an impression taken of defendant’s teeth. The complainant testified to the vaginal, anal and oral penetration. Sperm and acid phosphatase were found in a sample taken from her vagina, and an examining physician stated that the injuries he discovered were consistent with complainant’s story. The evidence was clearly sufficient for the jury to find defendant guilty on all four counts. The motion for acquittal was, therefore, properly denied.
 
 State v. Krummacher,
 
 269 Or 125, 138, 523 P2d 1009, 1015 (1974).
 

 As his second assignment of error defendant asserts that the trial court should have granted either his motion for mistrial or his motion for a new trial, both based upon the alleged misconduct of the prosecutor in his cross-examination of a defense character witness. The witness, who had been called just after the prosecutor completed his cross-examination of defendant, was asked by defense counsel if he had "formed an opinion” as to defendant’s reputation for truth and veracity. There was no objection to this question and the witness replied: "I’ve never had any problem with believing anything [defendant] said. I’ve never found him to lie to me.”
 

 
 *[1199]
 
 The prosecutor then cross-examined the witness in pertinent part as follows:
 

 "Q. * * * [I]s it your testimony that Mr. Kendrick’s reputation in the community is that of a truthful person?
 

 "A. As far as I know, yes, sir. Like I say, I never had any reason to doubt, or any question of anything that he told me.
 

 "Q. Do you know about Mr. Kendrick’s background?
 

 "A. Yes, sir.
 

 "Q. What do you know about it?
 

 "A. Well, I know he was put in the state pen for rape at a young age. * * *”
 

 [The prosecutor then asked a series of questions concerning the witness’ awareness of defendant’s prior convictions.]
 

 "Q. And do you know the facts of that prior rape case?
 

 "A. Yes, sir.
 

 "Q. Do you know he raped a four-year-old girl?”
 

 At that point, defense counsel moved for a mistrial. The court denied the motion, but had the last quoted question stricken and instructed the jury to disregard it. The court later instructed the jury that evidence of defendant’s prior conviction was to be considered only insofar as it related to his credibility.
 

 The state argues that the question concerning the four-year-old girl was proper either as a means of impeaching the witness to whom the question was addressed or as rebuttal of earlier witnesses who had testified that defendant did not suffer from a shortage of female companionship. Evidence concerning the details of a rape committed several years earlier would not have been properly admissible in rebuttal of evidence concerning defendant’s "sex life” at the time of the crime for which he was being tried.
 

 The state argues that the prosecutor was misled into believing that the witness was testifying as to defendant’s reputation for aggressiveness toward women. That is difficult to believe. The witness was testifying as to defendant’s character for truth and
 
 *[1200]
 
 veracity. In any event, the question was improper as a means of impeachment.
 

 It is well established that a witness who has testified in regard to the reputation of another for a particular trait may properly be asked if he has heard of specific incidents involving the other person which would bear upon his reputation for the trait in question.
 
 Miehelson v. United States,
 
 335 US 469, 69 S. Ct. 213, 93 LEd 168 (1948);
 
 State v. Ogden,
 
 39 Or 195, 65 P 449 (1901);
 
 State v. Bateham,
 
 94 Or 524, 186 P 5 (1919);
 
 State v. Linn,
 
 179 Or 499, 173 P2d 305 (1946);
 
 see also
 
 McCormick on Evidence, § 158 (1954 ed.). Such inquiries are allowed, not as a means of establishing that these prior incidents have occurred, but to test the witness’ knowledge of the other’s reputation and the reliability of his report of that reputation. Such questions are permitted in a criminal prosecution even though the specific "incident” inquired about is a conviction for the same crime as that for which the person whose reputation is in question is being tried.
 
 State v. Bateham, supra.
 
 When the witness has testified as to the defendant’s reputation for truth and veracity, a prior felony conviction — if not too remote in time — is considered to bear upon that trait.
 
 See State v. Ogden, supra.
 

 It is recognized, however, that this cross-examination technique is frought with danger of undue prejudice and requires close supervision. Wig-more, for example, has noted that
 

 "* * * [T]he serious objection to [these questions] is that practically the above distinction — between rumors of such conduct, as affecting reputation, and the fact of it as violating the rule against particular facts — cannot be maintained in the mind of the jury. The rumor of the misconduct, when admitted, goes far, in spite of all theory and of the judge’s charge, toward fixing the misconduct as a fact upon the other person, and thus does three improper things — (1) it violates the fundamental rule of fairness that prohibits the use of such facts, (2) it gets at them by hearsay only, and not by
 
 *[1201]
 
 trustworthy testimony, and (3) it leaves the other person no means of defending himself by denial or explanation, such as he would otherwise have had if the rule had allowed that conduct to be made the subject of an issue.* * * The value of the inquiry for testing purposes is often so small and the opportunities of its abuse by underhand ways are so great that the practice may amount to little more than a subterfuge, and should be strictly supervised by forbidding it to counsel who do not use it in good faith.” Wigmore, Evidence § 988 (3d ed. 1970).
 

 In this case, the prosecutor elicited from the witness that he knew, or had heard, that defendant had previously been convicted of rape. He should have been satisfied with that, but he was not. Under the pretext of impeaching the witness’ testimony, the prosecutor himself divulged to the jury underlying details of the prior rape conviction which were unnecessary to establish that the prior incident involved the same trait of character as that to which the witness had addressed his testimony. There has been no allegation that the prosecutor lacked a good-faith foundation for asking this question, but in other jurisdictions it has been recognized that in order to prevent undue prejudice such questions must be prohibited.
 
 See People v. Grimes,
 
 173 Cal App 2d 248, 254, 343 P2d 146, 149 (1959);
 
 see also
 
 cases cited in Annotations, 71 ALR 1504, 1519; 47 ALR 2d 1258, 1282. The reasoning of those decisions is persuasive that the question was improper.
 
 Cf. State v. Johnson,
 
 277 Or 45, 559 P2d 496 (1977) and ORS 45.600.
 

 Although the prosecutor acted improperly in asking the question concerning the details of the prior conviction, the trial court did not err in denying defendant’s mistrial and new trial motions. The court gave cautionary instructions and the weight of the other evidence against defendant was overwhelming.
 
 State v. Smith,
 
 4 Or App 261, 478 P2d 417 (1970);
 
 State v. Stanley,
 
 30 Or App 33, 566 P2d 193 (1977). Language in the latter case bears repeating here:
 

 "It is our function on appeal to review those rulings
 
 *[1202]
 
 only for abuse of discretion. In the context of trial, abuse of discretion means the tolerance of uninvited prejudice. Prejudice, as it may flow from the denial of an in camera evidentiary hearing or of a mistrial, means a reasonable possibility that the judge or jury will be influenced in the performance of the factfinding function by the irregular event. Whether that reasonable possibility exists must initially be determined by the trial court. The trial court is in the best position to determine the effect of the irregular event because such a determination must often take into account a sense of the courtroom atmosphere, the dynamics of the trial, the appearance of the parties and witnesses, and other intuitional and subjective factors which are seldom evident to appellate judges reading a transcript. Furthermore, the trial court is in a position to cure or minimize prejudice by taking immediate remedial action, whereas the only remedy available to the appellate court, reversal, is both late and drastic. Therefore the appellate court must defer to the trial court in matters of discretion unless it concludes as a matter of law, that is, beyond reasonable dispute, that the trial court abused its discretion by improperly tolerating uninvited prejudice.” 30 Or App at 36.
 

 Defendant also assigns as error the failure of the trial court to merge the crimes of rape and sodomy for conviction and sentencing. The court did not err in that regard.
 
 State v. Howes,
 
 14 Or App 436, 440-41, 512 P2d 1357, 1359,
 
 rev den
 
 (1973).
 

 The other issues raised by defendant
 
 in pro se
 
 were not preserved in the trial court, and we do not consider them.
 

 Affirmed.