Argued April 27, reversed and remanded
for a new trial May 29, 1979

STATE OF OREGON, *Respondent,*
*v.*
KEITH R. SWENSEN, *Appellant.*
(Nos. DA 141761, 141762, CA 12792)

595 P2d 518

Frank Noonan, Portland, argued the cause for appellant. With him on the brief was Winfree & Noonan, Portland.

Melinda L. Bruce, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Buttler and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Defendant appeals the judgment on his conviction for disorderly conduct (ORS 166.025), resisting arrest (ORS 162.315) and interfering with a police officer (Portland City Code § 14.08.14). The charges arose out of an incident at a tavern where defendant and other rugby players had gone after a match. At some point the police were called to arrest two of the players, who had stripped in the tavern. According to the arresting officers, defendant verbally abused them and physically interfered with the arrest. He was removed from the tavern. Outside, he threatened to break an officer's jaw, spat in an officer's face and, in an attempt to get back inside, tried to push his way "through" another officer, knocking her backwards. At trial defendant denied that he had done what the police said.

The defense called a character witness, who was acquainted with defendant both professionally and socially. He was asked if he had "been able to form an opinion as to Mr. Swensen's reputation in the community as to truthfulness." He replied that he had and that defendant's reputation was "honest, believable, truthful."

On cross-examination the prosecutor asked, "Do you know Mr. Swensen's reputation for being belligerent at times?" Defense counsel's objection was overruled. The witness replied that he had "heard of that." The prosecutor then asked the witness whether he had heard about particular incidents at two different bars and if he had heard about "Mr. Swensen's propensity toward belligerency after having consumed alcohol." The witness replied he had so heard. Finally, the prosecutor asked if he recalled telling two deputy district attorneys "about Mr. Swensen's propensity for being belligerent." Defendant's attorney moved for mistrial and dismissal of the charges with prejudice because of that cross-examination. The court denied the motion, but cautioned the prosecutor not to make further reference to defendant's "belligerency in taverns."

[467]

Defendant testified in his own behalf. On cross-examination the prosecutor made an oblique reference to one of the incidents about which the character witness had been asked. Defense counsel objected, and the objection was sustained. He renewed the motion for mistrial and dismissal; in the alternative, he moved the court to strike the cross-examination of the character witness and instruct the jury to disregard it. The court denied the motions for mistrial and dismissal, but said that on reconsideration he had determined the line of cross-examination concerning defendant's reputation for belligerency was inadmissible. He ordered the jury to disregard the cross-examination of the character witness. Defendant argues that the instruction did not cure the error. The state contends there was no error, but even if there was, the instruction was adequate.

■ Defendant did not place his character for belligerency or peaceableness "clearly and expressly" in issue (*State v. Ewing,* 174 Or 487, 503, 149 P2d 765 (1944)) merely by taking the witness stand, nor did the character witness' direct testimony place that character trait in issue. The questions relating directly to the witness' knowledge of that reputation were improper.

■ The questions whether the witness had heard reports of the specific incidents were also improper. It is a well-established, although often criticized, practice to cross-examine a witness who has testified to another's reputation with respect to some character trait by asking if the witness has heard of specific incidents which would tend to bear on that reputation. *State v. Kendrick,* 31 Or App 1195, 572 P2d 354 (1977), *rev den* (1978), and cases cited there. The theory supporting that practice is that such questions test the witness' knowledge of the person's reputation in the community and the accuracy of his report. *State v. Kendrick, supra.* Because the mere question whether the witness has heard of a specific incident may cause the jury to infer that the incident actually occurred, the questions must be limited to incidents which would

[468]

tend to bear on the person's reputation for the particular character trait in question. *See State v. Ogden,* 39 Or 195, 65 P 449 (1901); *State v. Kendrick, supra;* McCormick, Evidence 456, n 73, § 191 (2d ed E. Cleary 1972). Even though a witness testifying with respect to one character trait of a person might well be expected to know something of the person's reputation for other character traits, in recognition of the potential for abuse of the tactic the law limits cross-examination of the witness.

In this instance, the character witness testified only about defendant's reputation for truthfulness. Reports of incidents tending to reflect intemperance, quarrelsomeness and aggressiveness would have had no bearing on his reputation for truthfulness. The line of cross-examination complained of was therefore improper, as the trial court eventually recognized.

The issues then are whether the trial court erred in refusing to declare a mistrial and dismiss the charges with prejudice and whether the cautionary instruction was sufficient to cure the error. In determining whether dismissal is warranted for prosecutorial misconduct and in deciding if a cautionary instruction will sufficiently cure antecedent error, the trial court has considerable discretion. *State v. Kendrick, supra.* We conclude that the court did not abuse its discretion by refusing to dismiss with prejudice. However, in light of the extensiveness and highly prejudicial potential of the cross-examination and the fact that the instruction was not given until the damaging questions and answers had had almost a full day in which to settle in the jurors' minds, we conclude that the instruction was not sufficiently likely to undo the harm.

Reversed and remanded for a new trial.