Argued March 26, reversed and remanded for
a new trial June 25, reconsideration denied for
both appellant and respondent August 14, 1979

STATE OF OREGON, *Respondent,*
*v.*
JOHNNY CHARLES BRUNO, *Appellant.*
(No. 78-1761, CA 11492)

596 P2d 598

Harry T. Carp, Eugene, argued the cause for appel-
lant. With him on the briefs was Chez & Carp, Eugene.

Brian R. Barnes, Assistant District Attorney, Lane County, argued the cause for respondent. With him on the brief was J. Pat Horton, Lane County District Attorney, Eugene

Before Schwab, Chief Judge, and Lee, Buttler, and Joseph, Judges.

LEE, J.

**LEE, J.**

Defendant was convicted by a jury of murder (ORS 163.115). He and two co-conspirators were charged with killing defendant's wife during an evening of heavy drinking and group sexual activity. The focus of the defense was that defendant was not capable of forming homicidal intent because of an "alcoholic blackout". The trial court denied defendant's motion for a mistrial. We reverse.

At trial, during the testimony of Randall Hoffman (a neighbor of defendant's), the following exchange occurred:

"(By Mr. Barnes [the Prosecutor]) Did you ever discuss with the defendant killing?

[Objection by defendant overruled]
"* * * * *

"A. Not the killing. We did however have discussions regarding death and things of this nature though.

"Q. Specifically?

"A. Well—

[Defense objection overruled]

''A. Things like what had happened when [defendant] was over in Vietnam in the war.

"Q. Did he ask you specifically?

"A. What did he ask me?

"Q. About killing?

"A. No, there was not anything.

"Q. Could this [document] be handed to the witness, please.
"* * * * *

"A. Yes, he did ask if I was able to kill someone.

"(By Mr. Barnes) How many times did you discuss that?

"A. Oh, probably two or three times.

"Q. How about six or seven?

"A. Possibly, yes.
"* * * * *

"Q. What did you respond to him when he asked you if you could kill someone?

"MR. CARP [Defense counsel]: Objection. Irrelevant and it's hearsay.

"THE COURT: Hearsay?

"MR. CARP: I do believe it's irrelevant.

"THE COURT: I want to know your theory, Mr. Barnes, and we'll have to do it out of the presence of the jury.

"MR. BARNES: All right, I can forego it at this point.

After Hoffman completed his testimony, the jury was excused for the day. The following exchange between the court and counsel then occurred:

"THE COURT: I'm concerned, Mr. Barnes, over the admission of testimony about his talking about could somebody else kill someone. It's so remote from this case.

"MR BARNES: I have notes respecting other witnesses, Your Honor, who will testify that there are a lot of those discussions taking place by the defendant and other witnesses. The defendant was in Vietnam and he talked about killing, it wasn't that hard to kill and it was easy to kill once you have killed. Those kinds of statements.

"THE COURT: Well it seems to me you were letting in evidence in a way which is comparable to letting in evidence of other crimes. * * *"

The prosecuting attorney then indicated that the following morning he would produce a witness whose testimony would establish the relevance of Hoffman's testimony.

The next morning a witness, Shaw, was called and testified outside the presence of the jury. The prosecutor asked whether defendant had attempted to hire Shaw to kill defendant's wife. The answer was no.[1] Defendant then moved for a mistrial based on the

---

[1] We do not imply that, had Shaw answered affirmatively, Hoffman's testimony would have been any less prejudicial or more admissible. We are perplexed by the prosecutor's theory that, had Shaw testified that the defendant attempted to hire him to kill the victim, Hoffman's testimony about conversations with the defendant on the *general* subject of killing would have thereby become admissible.

improper admission of the quoted portions of Hoffman's testimony. The motion was denied, and the trial judge then instructed the jury:

"Members of the jury, from the witness, Hoffman, you heard some testimony about killing and Vietnam and that sort of thing. I direct you to disregard that testimony and put it out of your mind entirely. It has no part of this case."

The state does not now claim that the testimony was admissible. It argues only that the testimony was not "highly prejudicial," that the curative instruction was sufficient to remedy the error, and that the denial of the motion for mistrial was a matter for the trial judge's discretion.

It is correct that trial courts have wide discretion in determining whether cautionary instructions are sufficient to cure prejudice and whether to allow motions for mistrial. See *State v. Kendrick*, 31 Or App 1195, 1201-02, 572 P2d 354 (1977), *rev den* (1978); *State v. Atkinson*, 28 Or App 909, 917, 562 P2d 978 (1977). Here, the trial court exercised its discretion improperly. The nature of the testimony was such that the cautionary instruction would likely have had only a negligible effect at best. The evidence was highly prejudicial. The thrust of the testimony was that defendant was generally intrigued with the subject of killing. The evidence was also susceptible to the interpretation that the "someone" defendant was curious about Hoffman killing was defendant's wife. (Much of Hoffman's other testimony was about ongoing discord and violence in the relationship of defendant and his wife.) Given its lack of any probative weight, there is nothing to be weighed against the potential prejudicial impact of the evidence. The motion for a mistrial should have been granted.

Defendant makes one further assignment of error that requires our determination. He contends that the trial court erred in denying his motion for a change of

venue. We disagree. *See State v. Wampler*, 30 Or App 931, 933-34, 569 P2d 46 (1977), *rev den* (1978).

Reversed and remanded for a new trial.