## STATE OF OREGON,
### *Respondent,*
#### *v.*
## VICTOR JAMES NIXON,
### *Appellant.*

### (No. 78-3152, CA 12319)

607 P2d 1198

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer, Richardson, and Roberts, Judges.

TANZER, J.

## TANZER, J.

Defendant appeals his conviction by a jury of Solicitation to Commit Robbery in the First Degree, ORS 161.435 and 164.415. The basis of the charge was defendant's solicitation of an undercover police officer and a police informant to assist him in an armed robbery of the Village Inn, a restaurant and motel complex near Springfield, Oregon. Defendant assigns fifteen rulings of the court as error. The first thirteen assignments relate to separate motions for mistrial which were denied.[1] The fourteenth assignment of error contends a sawed-off shotgun was improperly admitted in evidence, and the final claim of error relates to impeachment of defendant's testimony.

The mistrial assignments relate to the admission of several parts of the conversations between defendant, the informant and the officer. The trial court, aware of the inherently inflammatory quality of all aspects of the discussions of which the solicitation was a part, made separate rulings on separate objections to each topic of discussion. Balancing relevance against tendency to prejudice, either expressly or implicitly, *see State v. Hockings,* 29 Or App 139, 562 P2d 587, *rev den* 279 Or 301 (1977), *cert den* 434 US 1049 (1978), the trial court admitted, excluded or limited testimony as to each part. Generally, the trial court admitted evidence of defendant's conduct which tended to show persuasion, preparedness and guilty mind, but rejected that evidence which tended to show that only slightly or not at all.

The trial court applied all the correct principles and we review to determine whether he applied them correctly. In reviewing the rulings, we must look to them in the context of the entire transaction, as did the trial court. Moreover, we bear in mind that in the gray area

---

[1] For reasons which are not apparent to us, the rulings on objections to the evidence are not assigned as error, but the denials of mistrial motions are challenged.

between the clearly relevant and the clearly irrelevant, we tend to defer to the judge of the trial court for reasons stated in *State v. Washington*, 36 Or App 547, 550, 584 P2d 24, *rev den* 284 Or 341 (1978); and *State v. Wampler*, 30 Or App 931, 569 P2d 46 (1977), *rev den* 281 Or 99, *cert den* 436 US 960 (1978). That is all the law in this opinion; the rest is facts, and we take them from the state's testimony.

The undercover officer, Anthony Nesbitt, and the informant, Frank Dykes, met defendant by prearrangement at a tavern to arrange to obtain a shotgun from defendant for use by Nesbitt and Dykes in a purported robbery. Dykes knew defendant, but Nesbitt did not. After some social activity, Dykes asked the defendant if he still had a shotgun for sale. Dykes said he wanted to borrow it and then said, "Well, I have something I want you to look at later." Defendant replied, "I don't need to know any more." Dykes then said, "Don't worry, its not Albertson's, I'm not going to go into your territory." Defendant's only response was to laugh.

At defendant's suggestion, they then went to a secluded place to continue their discussion. Dykes again asked defendant if he would supply the shotgun they requested. Defendant indicated he did not want to loan or sell the gun, but they could use it if he accompanied them with the gun. Later, during the conversation, he agreed to loan them the gun.

During the conversation, Dykes mentioned the name of a mutual acquaintance of his and defendant, called "Scratch." Defendant became upset because he had heard that Scratch told some people about defendant and Scratch robbing a grocery store in Marion, Oregon. He felt he should take some action to discourage Scratch from talking about the robbery. Defendant then described the details of the Marion robbery, including the fact that he had used a sawed-off shotgun and that they had made their getaway by using country roads.

Defendant then said he had planned future armed robberies at two locations in the Eugene-Springfield area. Defendant detailed a plan for the three of them to rob the Village Inn and steal money from the cash registers and money and valuables from the patrons while armed with sawed-off shotguns. He said he was prepared to shoot anyone who resisted. Defendant went over the plan and then the three men went to the Village Inn to look it over. There defendant reviewed the robbery plan twice more. Defendant said he would supply the weapons for the robbery. He said he had the sawed-off shotgun to loan the two men and another shotgun like it. He said he could acquire additional weapons from a friend who was a firearms distributor.

Nesbitt asked defendant if they should use masks so they could not be identified. Defendant said no, and at that point removed his hat, "slicked his hair back," and removed his glasses and dentures. Nesbitt expressed surprise and defendant indicated he had used such a disguise in the Marion robbery.

They left the Village Inn and went to defendant's home where he gave Nesbitt and Dykes a sawed-off shotgun. The understanding was that they were to return the gun in a few days. It was not, at that time, supplied for use in the planned Village Inn robbery.

Rebuttal testimony showed that approximately four days later, defendant told Dykes that he thought Nesbitt was a police officer and then described a plan to kill him. Defendant was arrested a short time later.

Marion Robbery

The trial court allowed evidence regarding defendant's participation in the Marion robbery because it deemed the evidence relevant to show defendant's solicitation. The trial court stated:

> "THE COURT: Well, I think that—the initiation perhaps of that subject may have been prompted by [Dykes]. But I think it's clear that the representation made to the officer and the persons he intended to

[931]

involve in the planned robbery was nevertheless a showing of expertise, and a factor, certainly, as far as a persuasion of those individuals concerning their prospective participation in the planned robbery."

The trial court was entitled to conclude that this was relevant to show that defendant engaged in a bragging show of experience and expertise to persuade the other two to join him. The trial court allowed a general account, but disallowed excessive details. We conclude that the evidence was prejudicial in the permissible sense that it indicates guilt, but not necessarily in the sense that it tended to divert the jury from determining guilt or innocence of the crime at issue. Accordingly we conclude that the exercise of discretion was lawful.

### Albertson's and defendant's "territory."

Evidence of the conversation regarding Albertson's as defendant's territory was relevant to demonstrate to the jury the tenor of the conversation of which it was a part. *Cf. State of Oregon v. Long*, 195 Or 81, 244 P2d 1033 (1952). It tended to explain why defendant would discuss his robbery plan with the two men. It was not sufficiently prejudicial to outweigh its tendency to make the state's evidence credible.

### The Threat to Kill Nesbitt

The state attempted, in its case in chief, to present evidence that defendant had planned to kill Nesbitt who he suspected of being a police officer. The court sustained defendant's objection to the evidence and ruled that any relevance was outweighed by the prejudicial impact.

Then, defendant testified that he met with Nesbitt and Dykes, but denied he had planned the robbery. His version of the discussion was that the two men told him they planned to rob the Village Inn. They asked his advice and he told them how certain aspects of the robbery should be carried out. He testified that he told the men he did not want to be involved in the robbery

plan. On cross-examination, the state asked the following questions:

"Q. I see. Now, your position here is that you've done nothing wrong with respect to this crime, is that—

"A. That's correct.

"Q. Is that correct? Mr. Nixon, why was it then that you manifested a desire to do away with Mr. Nesbitt?

"A. I never did—"

Defendant objected on the basis that the evidence had already been determined to be inadmissible. The state argued that in light of defendant's denial that he solicited the two men to commit robbery, the evidence was relevant to show defendant's consciousness of guilty involvement. The court overruled defendant's objection.[2] The state called Dykes as a rebuttal witness and he testified as to defendant's plan to kill Nesbitt.

Defendant contends that if the evidence has any relevance it is slight and is outweighed by the prejudicial inferences the evidence discloses. He argues, additionally, that if the evidence is offered on the theory that it shows guilty knowledge, it is ambiguous. During an offer of proof and discussion with the court outside the presence of the jury, the state indicated that Nesbitt and defendant had discussed a drug transaction. This information was not disclosed to the jury. Defendant's contention is that if the evidence

---

2

"THE COURT: Well, It will be the ruling of the Court that the motion for mistrial will be denied. I think the Court has made a studied effort to keep this evidence from the jury in the state's case in chief, I think because of the, what the Court felt the prejudicial effect was. But I think that it's a different matter where defendant now chooses to take the stand and deny any complicity in the matters alleged in the indictment. And I think then that he cannot be heard to hide behind the fact that the statement may be ambiguous. If he wishes to explain it, I presume he can. Admittedly, it puts him in a difficult position. But I think he's placed himself there. And under those circumstances, I think that the Court would permit the inquiry."

shows consciousness of guilt it could be consciousness of involvement in an illegal drug transaction rather than a robbery solicitation, and since the jury was not provided with the information regarding a drug transaction, it may draw an incorrect inference. Defendant argues that if he is to rebut an inference that the evidence shows consciousness of guilty involvement in the solicitation, he would have to testify concerning the planned drug transaction and thereby bring in evidence of additional crimes to his prejudice. He contends the alternate inferences that could be drawn and the dilemma in which he is placed should require exclusion of the evidence.

The first inquiry is whether the evidence is relevant, *State v. Hockings, supra.* We conclude that it is. The state was required to prove beyond a reasonable doubt that defendant solicited Nesbitt to commit the crime of first degree robbery. The state's evidence in chief established that fact. The court was within its discretion in forbidding the state from adding further proof of guilty mind. When defendant testified in defense that his participation in the conversation had no element of criminal involvement, the scales of proof shifted and the trial court had a new and different determination to make. From the evidence that defendant planned to kill Officer Nesbitt, after suspecting that he was a police officer, there is a permissible inference that defendant was conscious he had committed the crime charged, contrary to his statements from the witness stand, and wished to remove the principal witness. The evidence has substantial probative value which the trial court properly concluded was not outweighed by prejudice to the defendant.

The dilemma the defendant would face in rebutting the evidence is of his own making. He cannot reduce the quantum of evidence available to the state by making some of his actions criminal and thereby insulate himself from facing evidence which is otherwise

[934]

relevant and material to prove the charge. *See State of Oregon v. Long,* 195 Or 81, 244 P2d 1033 (1952). Defendants are often placed in such dilemmas. For example, a defendant, in order to rebut telling evidence presented by the state, may have to take the witness stand and be subject to impeachment because of prior criminal convictions. Or a defendant, in order to establish an alibi defense, may have to testify that he was involved in other criminal activities at the time he is alleged to have committed the crime for which he is being tried. Although the defendant may want evidence of the drug transaction out more than he wants it in, his awkward tactical position is not a basis for excluding relevant evidence.

## Disguise

On rebuttal, the state first presented evidence that during the discussion regarding the Village Inn robbery, defendant had rearranged his hair, and removed his glasses and dentures to demonstrate how he could disguise his appearance. Defendant had been asked on cross-examination if he had demonstrated the disguise and he denied he had. The evidence did not concern a collateral matter. The disguise was demonstrated during defendant's discussion of his plan to rob the Village Inn. It was permissible rebuttal.

## The shotgun

Defendant's plan to rob the Village Inn included the use of sawed-off shotguns. He told the two men he had another weapon like the one he was lending them and could acquire additional weapons from a friend. He was charged with solicitation to commit first degree robbery, which involves the use of weapons.[3] It was

___

[3] ORS 164.415 provides:

"(1) A person commits the crime of robbery in the first degree if he violates ORS 164.395 and he:

"(a) Is armed with a deadly weapon; or

"(b) Uses or attempts to use a dangerous weapon * * *

"* * * * *."

relevant to show that defendant possessed a sawed-off shotgun and planned to use such a weapon in the Village Inn robbery.

Defendant objected to the admission of the shotgun in evidence on the ground that it was not identified as the weapon defendant planned to use in the Village Inn robbery. Officer Nesbitt identified the gun as the one he had received from defendant. It is reasonable to infer that this was one of the guns defendant intended to supply for the planned robbery. The gun was properly admitted.

In summary, this trial was a thornbush of potentially inflammatory and diversionary evidence. The trial court carefully and correctly sorted out the relevant from the negligibly relevant.

Affirmed