Argued and submitted April 29, reversed and remanded June 15, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID WESLEY MOORE,
*Defendant-Appellant.*

Jackson County Circuit Court
081458FE; A142095

258 P3d 1279

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Edmonds, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals a judgment of conviction for two counts of first-degree rape, ORS 163.375, two counts of first-degree sexual abuse, ORS 163.427, and one count of second-degree sexual abuse, ORS 163.425.[1] In multiple assignments of error on appeal, defendant challenges, *inter alia*, the admission of evidence that, years before the charged conduct, he had had a 14-year incestuous relationship with his younger brother and, on one occasion, had had sexual relations with a teenage girl. Defendant contends that that evidence was not relevant for a permissible purpose, under OEC 404(3) and 404(4),[2] and, in the totality of the circumstances, its admission was not harmless. As amplified below, we conclude that the trial court erred in admitting the evidence of defendant's prior misconduct; further, we cannot say that there was "little likelihood" that the erroneously admitted evidence affected the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Accordingly, we reverse and remand.

A detailed discussion of the facts concerning defendant's alleged conduct would not benefit the bench, the bar, or the public. It is sufficient to note that defendant was indicted on numerous sex offenses involving his daughter, who was born in November 1992 and was 16 years old at the time of trial. The alleged conduct began in November 2000, when complainant was about eight years old, and continued for a period of approximately seven years.

---

[1] The court also merged the guilty verdicts for two counts of incest, ORS 163.525, with one of defendant's convictions for rape.

[2] OEC 404(3) provides that

"[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In turn, OEC 404(4) provides, in part, that,

"[i]n criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"* * * * *

"(d) The United States Constitution."

As pertinent on appeal, with respect to the evidence of defendant's prior misconduct, before trial, the state sought an *in limine* ruling pertaining to the admissibility of evidence that (1) defendant had had a 14-year incestuous relationship with his younger brother; and (2) on one occasion, defendant had engaged in sexual relations with a teenage girl. The incestuous relationship with the brother began when defendant was approximately 12 years old and ended when he was approximately 26 or 27 years old—which was approximately five years before complainant was born and approximately 13 years before the first instance of alleged abuse. Similarly, the sexual encounter with the adolescent girl occurred approximately 13 years before the first instance of alleged abuse here. The state contended that the proffered evidence was admissible on a variety of grounds (*e.g.*, knowledge, planning, consciousness of guilt, motive, absence of mistake). Ultimately, the trial court, over defendant's objection, ruled that the state could present the challenged evidence, noting, without elaboration, that the evidence was "relevant" and "admissible."

In her opening statement, the prosecutor highlighted defendant's prior misconduct. Specifically, the prosecutor stated:

"What [complainant] didn't know when she disclosed the sexual abuse to her mom and to the police, stoned or not, whatever she's doing, was that her dad had a 14 year incestuous, sexual relationship with his little brother. She didn't know about it at the time when she reported it.

"She also never knew that when [defendant] was 26 years old, a 15 year old girl came over to his house in a rain storm for comfort, and he put her in his bed to warm and one thing led to another and [defendant] ended up having sexual intercourse with this 15 year old girl more than once."

During the state's case-in-chief, complainant testified regarding the alleged instances of abuse. The state did not offer any eyewitness testimony or forensic evidence to corroborate the abuse. The state did, however, offer the testimony of Harold Pickens, complainant's psychotherapist. Pickens diagnosed complainant with sexual abuse.[3] Further,

---

[3] The trial in this case occurred before the Supreme Court issued its decision in *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), and defense counsel did not

Brian Strickland, a consultant who interviewed defendant at the request of the police, testified. Strickland testified that, during questioning, defendant told him about the 14-year incestuous relationship with his brother and the sexual encounter with a teenage girl that occurred when defendant was 26 years old.

Defendant did not testify at trial. Although various witnesses (*viz.*, Strickland and the police officer who arrested defendant) testified that defendant had exhibited an atypical affect—*viz.*, laughing hysterically—when confronted with his alleged conduct and had provided amorphous and ambiguous responses to some questions about his alleged conduct, they also confirmed that defendant denied that he had engaged in unlawful conduct. Further, there was evidence that complainant was a troubled teenager who, among other things, had been involved with drugs and had attempted to harm herself (*e.g.*, overdosing on medication, self-cutting).

In sum, this case reduced to a swearing match. Defendant's and complainant's respective credibility was at the heart of this case.

The trial court instructed the jury about how it could use the evidence concerning defendant's prior misconduct. Specifically, the trial court stated:

"The defendant's character is not an issue in this case. By that I mean whether [defendant] is a good person or a bad person. The issue is whether [defendant] is guilty of any of the crimes charged.

"You have heard evidence of alleged crimes, wrongs, or acts that are not charged in this indictment. While you may consider the evidence, such evidence is not to be considered to prove [defendant's] character or that he acted in conformity therewith on—on a particular occasion."

---

object to Pickens's diagnosis testimony. Indeed, in cross-examining Dr. Curtis Oddo, a pediatrician who had examined complainant in 2006 and testified for the state, defendant's counsel elicited testimony (which had not been explicitly elicited on direct examination) that Oddo had also diagnosed sexual abuse. On appeal, defendant, in his third assignment of error, contends that the admission of Pickens's "diagnosis of child sexual abuse in the absence of physical evidence of abuse" was reversible "plain error" after *Southard*. Given our analysis and disposition, which necessitates a reversal and remand on other grounds, we do not address that contention.

Immediately thereafter, in closing argument, the prosecutor refocused the jury's attention on defendant's prior misconduct, highlighting the prior incest and sexual misconduct evidence with insinuations of propensity:

"What you're going to be back there deciding is the issue the Defense has fronted, is this about a teenage girl making things up? Is she making up sexual acts with her dad?

"* * * * *

"[Defendant's] relationship with his brother ends, his relationship with his wife ends and he turns to his daughter. Brother was 8 years old when that started, his daughter was 8 years old when that started.

"[Complainant] wakes up from a bad dream. Her mom has just left the home. Her little sister's there, she's just a baby and she's left with her dad. What else would she go do? She wants to go cuddle with her dad to seek comfort and safety from the one person [who is] supposed to give it to her.

"Well, that doesn't happen, this is the first of an endless stream of six years of sexual contact * * *.

"* * * * *

"Well one thing lead[s] to another with [defendant] and his daughter, same as it did with the 15 year old that came over in the rainstorm that he put in his—in his bed to—to warm her up. [Defendant] admits * * * that he seduced that girl."

The jury convicted defendant of all counts. Defendant appeals.

On appeal, defendant reiterates that the evidence concerning his 14-year incestuous relationship with his younger brother and his sexual encounter with the teenage girl was inadmissible and that the erroneously admitted evidence was not harmless. Specifically, defendant asserts:

"The state may not introduce evidence of a defendant's prior bad acts to suggest that the defendant committed the charged offenses due to a criminal propensity. OEC 404(3). Evidence of prior bad acts may be admitted, however, if introduced for a relevant non-character purpose. * * * Defendant's history of sexual misconduct with his brother

and his single instance of sexual misconduct with the teen-age girl were not relevant to a fact at issue in the case, but instead were used to demonstrate defendant's propensity to commit inappropriate sexual acts—a purpose that is pro-hibited under OEC 404(3). Accordingly, the trial court's admission of the bad act evidence was in error. Admission of the bad act evidence was not harmless because the evidence was without probative value outside of the prohibited pro-pensity inference, was gravely inflammatory and deroga-tory of defendant's character, and was relied on heavily by the state as evidence of defendant's guilt."

In response, the state does not attempt to defend the trial court's admission of the challenged evidence. Instead, the state's only contention is that the admission of the evi-dence was harmless. Specifically, the state contends:

"The prior acts were not similar to the conduct underlying the charges, and thus a jury was unlikely to infer from the prior acts that defendant's character included a propensity for sexual abuse with which he acted in conformity on the charged occasions. Although the jury could infer from the prior acts that defendant's character was poor in general, defendant's own conduct and statements during the inves-tigation of the charged conduct so tarnished his character and established his guilt that the prior-acts evidence likely had little effect on the verdict."

Moreover, the state asserts that "the jury was instructed that it could not use the prior bad act evidence to infer anything about defendant's character or that he acted in conformity with the prior acts with respect to the victim[.]" For the rea-sons explained below, we disagree with the state that the erroneous admission of the evidence was harmless.

We begin by noting that the state, on appeal, has not urged any colorable basis under which the evidence is rele-vant under OEC 404(3)—and we perceive none. Indeed, the state's harmless error argument proceeds, in part, from the proposition that the evidence was so dissimilar to the conduct alleged that the jury could not possibly have relied on it. Accordingly, the trial court erred in admitting the evidence pursuant to OEC 404(4),[4] and the only issue that remains is

---

[4] Because we have determined that the challenged evidence was inadmissible because it was not relevant, we need not address defendant's contention that its admission violated the Due Process Clause of the United States Constitution.

whether the erroneous admission of that evidence was harmless.

In *Davis*, the Supreme Court framed the proper inquiry under Article VII (Amended), section 3, of the Oregon Constitution:[5]

"Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict? The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling."

336 Or at 32. Further, in *Davis*, the court explained that

"a variety of considerations may properly inform that 'single inquiry,' including 'the nature of the error that occurred below,' *id.*, and the 'context of the legal error.' *Id.* at 33. The court noted, for example, that the erroneous exclusion or admission of evidence would be harmless 'if the particular issue to which the error pertains has no relationship to the jury's determination of its verdict,' *id.* at 32, or if the jury 'would have regarded the * * * evidence as duplicative or unhelpful to its deliberations.' *Id.* at 33. Ultimately, the Supreme Court in *Davis* concluded that the erroneous exclusion was not harmless, because it could not 'say that the excluded statements were merely cumulative of' admitted evidence—and, indeed, 'were qualitatively different than the evidence that the jury heard'—and because 'the excluded evidence goes directly to the heart of defendant's factual theory of the case.' *Id.* at 34."

*State v. Perkins*, 221 Or App 136, 143, 188 P3d 482 (2008) (quoting *Davis*, 336 Or at 32-34) (omission in *Perkins*).

This case reduced to a swearing match in which the jury's assessment of credibility was decisive. As we have previously determined, the evidence of defendant's prior misconduct was not relevant for a proper purpose under OEC

---

[5] Article VII (Amended), section 3, provides, in part:

"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

404(3). Instead, the erroneously admitted evidence was unadulterated propensity evidence—of a particularly inflammatory nature—that would allow a jury to infer, contrary to the prohibition in OEC 404(3), that defendant "acted in conformity therewith." Bluntly: Defendant had engaged in incest with his younger brother, so he must have engaged in incest with his daughter. Defendant had a sexual encounter with an adolescent girl, so he must have engaged in sex with his daughter.

Indeed, as noted, the prosecutor, in her closing statement, not so subtly invited the jury to infer that, because defendant had engaged in prior misconduct, he had committed the crimes in this case. *See* 243 Or App at 438 (describing the prosecutor's statements). Given the totality of those circumstances, and despite the trial court's limiting instruction, we cannot say that there was little likelihood that the erroneously admitted evidence affected the jury's verdict. Accordingly, the error was not harmless, and defendant's convictions must be reversed.

Reversed and remanded.