Argued and submitted September 13, 2011, reversed and remanded
January 16, 2013

BRADLEY CHRISTOPHER HOLBROOK,
*Petitioner-Appellant,*

*v.*

Sharon BLACKETTER,
Superintendent,
Eastern Oregon Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV051636; A135654

297 P3d 482

Matthew G. McHenry argued the cause for appellant.
With him on the briefs was Michael R. Levine.

Laura S. Anderson, Senior Assistant Attorney General,
argued the cause for respondent. With her on the brief were
John R. Kroger, Attorney General, and Mary H. Williams,
Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge,
and Brewer, Judge pro tempore.*

---

* Brewer, J. pro tempore, *vice* Rosenblum, S. J.

SERCOMBE, J.

**SERCOMBE, J.**

Petitioner appeals a judgment denying his claims for post-conviction relief. He raises five assignments of error, all but one of which we reject without discussion. We write only to address petitioner's contention that the post-conviction court erred in excluding trial counsel's testimony—given as part of an Oregon State Bar disciplinary proceeding—on the ground that it was irrelevant. Petitioner argues that the testimony is relevant to his post-conviction claim that his trial counsel was constitutionally inadequate. Specifically, petitioner argues that it is relevant to show trial counsel's knowledge of certain statements made by the prosecutor prior to the second of two trials and to show "why [trial counsel] did or did not take certain actions" in his representation of petitioner. We agree with petitioner that the testimony was relevant for those reasons and that its exclusion was not harmless. Accordingly, we reverse and remand for a new post-conviction trial.

In 1999, petitioner was charged with two counts of sexual abuse in the first degree, ORS 163.427, after the complainant alleged that petitioner touched her inappropriately while she was playing at a house where petitioner was visiting. A trial on those charges ended with a hung jury. Petitioner filed a complaint with the Oregon State Bar alleging that the prosecutor had made improper statements to the public, including jurors from the first trial, and the Bar began an investigation. In a subsequent letter to the Bar, the prosecutor explained that he had

> "advised [a juror from the first trial] that there were other *rumors* about [petitioner] that also caused me to be concerned. One of the *rumors* was a suspicion voiced by [petitioner's] former wife to Mrs. Carpenter[1] that at one time she had been concerned that [petitioner] had been involved with a female student at the school where he was a teacher. I informed this juror that I had made some inquiry into this matter but that I had been unable to find any independent information about [petitioner's ex-wife's] suspicion as it had been related to me. I also stated that such an allegation did not warrant any detailed

---

[1] Carpenter is the sister of petitioner's ex-wife, and she was a witness for the state at both trials.

investigation to determine whether it was true or not as it would likely have no evidentiary value in the case at hand because of the lack of similarity in the situations and the ages of the victims."

(Emphases in original.) The prosecutor also noted that he had told two other jurors that

"[t]he only information I had about any relationship between [petitioner] and a possible student came from Mrs. Carpenter. That information was that [petitioner's ex-wife] had voiced her suspicions that her husband had done this; however, I informed them that I had been unable to find any information to support [petitioner's ex-wife's] suspicion. In so far as I was able to determine, it was an unconfirmed suspicion and I did not make any statement that it was more than a suspicion."

Meanwhile, petitioner was reindicted on three counts of first-degree sexual abuse. At the second trial, petitioner called several character witnesses to testify as to his sexual propriety. One witness, Millette, testified that petitioner had an "appropriate" sexual character. On cross-examination, the prosecutor impeached her testimony using the information that he had received from Carpenter:

"[PROSECUTOR]: Have you ever heard anything about the defendant having a secret correspondence with a 14-year-old girl?

"[WITNESS]: Never.

"[PROSECUTOR]: Did you ever know that the defendant came home with hickeys on his stomach and at unusual times of night?

"[WITNESS]: No.

"[PROSECUTOR]: Did you ever know that he would often be out away from his wife until 3:00, 4[:00] in the morning?

"[PETITIONER'S TRIAL COUNSEL]: Objection. He's making a statement of fact when there's no evidence to support it. He can ask whether—

"THE COURT: I know what he can ask. If you have a basis for asking them, fine.

"[PROSECUTOR]: I have a basis.

"THE COURT: All right. Then go ahead and ask them.

"[PROSECUTOR]: Did you ever know that he was out until 3:00, 4[:00] in the morning and would come up at that period of time without much explanation as to where he'd been?

"[WITNESS]: No.

"[PROSECUTOR]: And do you know that he—prior to their divorce that he was in an adulterous relationship with another woman?

"[WITNESS]: No."

Another witness, Chubb, testified that petitioner had an "appropriate" and "upstanding" sexual character. On cross-examination, a similar exchange occurred:

"[PROSECUTOR]: Are you aware that while he was married, he'd often come home at 3:00 or 4[:00] in the morning without an explanation?

"[WITNESS]: No. I wouldn't be aware of that.

"[PROSECUTOR]: Are you aware that he was suspected of having a relationship with a little girl writing letters secretly to a post office box that his wife did not have access to?

"[PETITIONER'S TRIAL COUNSEL]: I'm going to object to the past tense. He was suspected. He hasn't identified whether [these are] * * * Carpenter's suspicions or—

"THE COURT: Overruled.

"[PROSECUTOR]: Are you aware of that?

"[WITNESS]: I—I just know what—

"THE COURT: Ma'am, you're either aware or you're not aware.

"[WITNESS]: Oh, no.

"[PROSECUTOR]: Are you aware that he would return home with hickeys on his stomach unexplained?

"[WITNESS]: No.

"[PROSECUTOR]: Are you aware that prior to the divorce he was in an adulterous relationship with another woman?

"[WITNESS]: No, I'm not."

A nonunanimous jury ultimately found petitioner guilty of one count of first-degree sexual abuse. He was found not guilty on the other two counts. Following his conviction, petitioner filed a direct appeal, which was unsuccessful. *State v. Holbrook*, 196 Or App 353, 103 P3d 1211 (2004), *rev den*, 338 Or 681 (2005).

Ultimately, the Bar brought an action against the prosecutor, alleging that the prosecutor's questions to Millette and Chubb on cross-examination violated Code of Professional Responsibility Disciplinary Rule (DR) 7-106(C)(1).[2] The Bar trial panel found that the prosecutor's questions were improper under a court-made corollary to OEC 405(1)[3] because the prosecutor "did not have a good faith belief that [petitioner] had actually engaged in the conduct in question." *In re Tichenor*, 340 Or 108, 111-12, 129 P3d 690 (2006) (internal quotation marks omitted). The Bar trial panel then concluded that, on that basis, the prosecutor had violated DR 7-106(C)(1). *Tichenor*, 340 Or

---

[2] That rule provided that, "[i]n appearing in the lawyer's professional capacity before a tribunal," a lawyer may not "[s]tate or allude to any matter that the lawyer has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence."

The Oregon Rules of Professional Conduct became effective January 1, 2005. Because the conduct referenced here occurred before that date, the Oregon Code of Professional Responsibility applied.

[3] OEC 405(1) provides:

"In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."

"Because of the significant potential for prejudice posed by that type of cross-examination, the courts have ruled that 'it is improper for a lawyer to cross-examine a character witness regarding prior instances of conduct when the lawyer does not have a reasonable basis for believing such conduct actually occurred.'" *In re Tichenor*, 340 Or 108, 112-13, 129 P3d 690 (2006) (brackets omitted) (quoting Laird C. Kirkpatrick, *Oregon Evidence* § 405.04, Art IV-104 (4th ed 2002)); *see also Troutman v. Erlandson*, 279 Or 595, 602, 569 P2d 575 (1977) (majority rule requires that lawyer have "good faith" belief that conduct occurred). That rule is considered a corollary to the right in OEC 405(1) to cross-examine on specific instances of conduct. *Tichenor*, 340 Or at 113.

at 112. The Supreme Court reversed, concluding that "[t]he two rules address different concerns. Proof of a violation of the corollary to OEC 405(1) does not give rise to a violation of DR 7-106(C)(1)." *Id.* at 115. The court did not consider whether the questions were inadmissible under the corollary to OEC 405(1)—that is, whether the prosecutor lacked a reasonable basis to believe that the conduct had actually occurred—concluding that "[t]he Bar alleged only that the [prosecutor] violated DR 7-106(C)(1), and it is sufficient in this case to hold only that the evidence failed to establish a violation of that disciplinary rule." *Id.* at 116.

Petitioner filed this petition for post-conviction relief, alleging, among other things, that his trial counsel was constitutionally inadequate in failing to "prevent the state from introducing improper character impeachment." Petitioner argued that the prosecutor's questions on cross-examination were improper under the corollary to OEC 405(1) because the prosecutor lacked a reasonable basis to believe that the conduct alleged in his questioning on cross-examination had actually occurred.

In support of his post-conviction claim that trial counsel was inadequate, petitioner sought to introduce the testimony of trial counsel, given as part of the above-mentioned Bar proceeding. At that proceeding, petitioner's trial counsel testified that he was "shocked" by the prosecutor's questions on cross-examination. Trial counsel explained that, although he knew of the rumors prior to the second trial, he did not believe that the prosecutor would refer to them because,

"in [the prosecutor's] response [to the Bar], he had adamantly denied—he admitted that Ms. Carpenter had made these statements that she attributed to [petitioner's ex-wife] and that he had tried to investigate them and was unable to corroborate any of them. And [the prosecutor] emphatically stated that [he had] no reason to believe that any of this is beyond rumor. It has no evidentiary value, there's no need to investigate it further. [He] told the jurors because [he] had no reason to believe it to be true, in essence."

Further, he testified that he did not conduct research on the law concerning cross-examination about specific instances of conduct until after the second trial (in connection with a motion for new trial). Trial counsel also testified at length regarding the manner and extent to which he objected to the prosecutor's questions on cross-examination.

The post-conviction court excluded trial counsel's testimony on the ground that it was irrelevant because the Supreme Court had reversed the decision of the Bar trial panel. Petitioner now appeals, arguing that "sworn testimony from * * * trial counsel regarding his knowledge of certain events and why he did or did not take certain actions is highly relevant to this proceeding." The state responds that the post-conviction court did not err in concluding that the testimony was irrelevant.

We agree with petitioner. Under OEC 401, relevant evidence is

> "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

As noted, petitioner alleged below that trial counsel was constitutionally inadequate for failing to adequately prepare and object to the prosecutor's questions during cross-examination. Consequently, trial counsel's testimony is relevant to show his knowledge of events and frame of mind prior to the second trial and during the questioning. In that context, it is clearly relevant to whether trial counsel's representation of petitioner was constitutionally inadequate under the circumstances.

Moreover, the testimony is not made irrelevant by the fact that the Supreme Court reversed the decision of the Bar trial panel. As noted, in doing so, the Supreme Court did not decide the underlying *evidentiary issue*—whether the prosecutor had a reasonable basis to believe that the conduct that he referenced during cross-examination had actually occurred. It held only that the Bar had presented insufficient evidence to show that the prosecutor's questioning on cross-examination violated a disciplinary

rule. Accordingly, the opinion has no bearing on whether the questions were inadmissible under the rules of evidence and whether, if so, trial counsel was constitutionally inadequate in his preparation and response to them.

Nevertheless, we must still consider whether that error was harmless. "Evidentiary error is not reversible 'unless a substantial right of the party is affected.'" *Petersen v. Palmateer*, 172 Or App 537, 545, 19 P3d 364, *rev den*, 332 Or 326 (2001) (quoting OEC 103(1)). "Trial error substantially affects the rights of a party if the outcome of the case either would or may have been different had the error not occurred." *Id.* Here, we conclude that this standard was satisfied. Accordingly, we reverse and remand for a new post-conviction trial.

Reversed and remanded.