DEHOOG, J.
*291 *227 Petitioner, who, in 2002, was convicted of one count of first-degree sexual abuse, ORS 163.427, appeals from a judgment denying him post-conviction relief. This is petitioner's second appeal in the post-conviction proceeding. In the first appeal, we reversed the post-conviction court's denial of relief and remanded for a new post-conviction trial on petitioner's allegation that trial counsel had performed inadequately under Article I, section 11, of the Oregon Constitution and ineffectively under the Sixth Amendment to the United States Constitution in failing to prepare for and properly object to certain questions that the prosecutor asked of two of petitioner's character witnesses at trial. Holbrook v. Blacketter , 254 Or. App. 549, 297 P.3d 482 (2013) ( Holbrook I ). On remand, the post-conviction court determined that trial counsel had performed inadequately and ineffectively in three ways with respect to those questions. However, the court held that the inadequate performance did not prejudice petitioner and, consequently, entered a judgment denying relief.
On appeal, petitioner assigns error to the court's determination that he was not prejudiced by trial counsel's inadequate performance, and the state does not challenge the court's determination that trial counsel performed inadequately. We conclude that, on the facts found by the post-conviction court, petitioner was prejudiced under Article I, section 11, by the inadequate performance.[1] Accordingly, we reverse and remand for entry of a judgment granting post-conviction relief.
I. FACTS AND PROCEDURAL HISTORY
We state the facts consistently with the post-conviction court's explicit and implicit findings as long as there is evidence in the record to support them. Montez v. Czerniak , 355 Or. 1, 8, 322 P.3d 487, adh'd to as modified on recons., 355 Or. 598, 330 P.3d 595 (2014). We outline petitioner's two criminal trials and the other relevant *228 proceedings here. We provide additional detail regarding the evidence presented at petitioner's second criminal trial below, as necessary during our analysis.
A. Criminal Trials and Bar Proceedings
In 2001, petitioner was tried on two counts of first-degree sexual abuse for allegedly touching the victim, a 10-year-old girl, on the vaginal area and buttocks while both petitioner and the victim were visiting the home of a friend of the victim. There were no third-party witnesses to the touching and there was no physical evidence that it had taken place. The jury deadlocked, and the court declared a mistrial.
In a new indictment, petitioner was charged with two additional counts of first-degree sexual abuse arising from the same incident. The indictments were joined and petitioner was tried on three counts of first-degree sexual abuse. Before the second trial began, however, petitioner filed a complaint against the prosecutor with the Oregon State Bar, asserting that, after the first trial, the prosecutor had made false statements about him to jurors from the first trial-statements that petitioner had had a secret relationship with a young female student when he was a teacher and that he had engaged in other acts of sexual impropriety.
The prosecutor did not deny that he had spoken with jurors from the first trial and that he had discussed with them the matters that petitioner alleged. The prosecutor's statements to the jurors were based on assertions made to him by Elizabeth Carpenter, the sister of petitioner's ex-wife, Linda Holbrook.[2] Carpenter claimed that Holbrook *292 had told her, among other things, that Holbrook suspected petitioner of having an inappropriate relationship with a student. The prosecutor submitted a letter to the Bar in which he asserted that the things he heard from Carpenter about petitioner, and that he had discussed with the jurors, were only "rumors" and that Holbrook's statement to Carpenter conveyed "an unconfirmed suspicion." One of the jurors *229 stated that, if the jury had known of those things during the first trial, jurors would have voted differently.
The prosecutor also informed the Bar that he had tried to substantiate the allegation about petitioner's relationship with a student but that he had been unable to find any evidence to support the allegation. The prosecutor did not discuss Carpenter's assertions with Holbrook, the alleged source of Carpenter's information. Before the second trial began, however, defense counsel provided the prosecutor with a statement from Holbrook in which she denied telling her sister about any such things and denied that any of the underlying accusations were true.
In the second criminal trial, the court ruled that petitioner could present evidence, in the form of character witnesses, of his character trait of "sexual propriety." See State v. Enakiev , 175 Or. App. 589, 29 P.3d 1160 (2001) (evidence of defendant's character trait of sexual propriety relevant in prosecution for sex crime). The defense called several witnesses to testify to their opinions that petitioner had the character trait of sexual propriety. Because of scheduling constraints, the first two of those witnesses, Millette and Chubb, testified out of order, during a break in the prosecution's case-in-chief. During cross-examination of Millette and Chubb, the prosecutor asked each of them whether she knew of or had heard the things that Carpenter had told the prosecutor that Holbrook had told her. We set out those parts of the trial transcript in Holbrook I :
" '[PROSECUTOR]: Have you ever heard anything about the defendant having a secret correspondence with a 14-year-old girl?
" '[WITNESS]: Never.
" '[PROSECUTOR]: Did you ever know that the defendant came home with hickeys on his stomach and at unusual times of night?
" '[WITNESS]: No.
" '[PROSECUTOR]: Did you ever know that he would often be out away from his wife until 3:00, 4[:00] in the morning?
*230 " '[PETITIONER'S TRIAL COUNSEL]: Objection. He's making a statement of fact when there's no evidence to support it. He can ask whether-
" 'THE COURT: I know what he can ask. If you have a basis for asking them, fine.
" '[PROSECUTOR]: I have a basis.
" 'THE COURT: All right. Then go ahead and ask them.
" '[PROSECUTOR]: Did you ever know that he was out until 3:00, 4[:00] in the morning and would come up at that period of time without much explanation as to where he'd been?
" '[WITNESS]: No.
" '[PROSECUTOR]: And do you know that he-prior to their divorce that he was in an adulterous relationship with another woman?
" '[WITNESS]: No.'
"Another witness, Chubb, testified that petitioner had an 'appropriate' 'upstanding' sexual character. On cross-examination, a similar exchange occurred:
" '[PROSECUTOR]: Are you aware that while he was married, he'd often come home at 3:00 or 4[:00] in the morning without an explanation?
" '[WITNESS]: No. I wouldn't be aware of that.
" '[PROSECUTOR]: Are you aware that he was suspected of having a relationship with a little girl writing letters secretly to a post office box that his wife did not have access to?
" '[PETITIONER'S TRIAL COUNSEL]: I'm going to object to the past tense. He was suspected. He hasn't identified whether [these are] * * * Carpenter's suspicions or-
" 'THE COURT: Overruled.
*293 " '[PROSECUTOR]: Are you aware of that?
" '[WITNESS]: I-I just know what-
" 'THE COURT: Ma'am, you're either aware or you're not aware.
*231 " '[WITNESS]: Oh, no.
" '[PROSECUTOR]: Are you aware that he would return home with hickeys on his stomach unexplained?
" '[WITNESS]: No.
" '[PROSECUTOR]: Are you aware that prior to the divorce he was in an adulterous relationship with another woman?
" '[WITNESS]: No, I'm not.' "
254 Or. App. at 552-54, 297 P.3d 482 (brackets in Holbrook I ). The jury found petitioner guilty of one count of first-degree sexual abuse in a nonunanimous verdict; it acquitted him of the two other counts.
After the verdict, petitioner's trial counsel moved for a new trial. He argued, among other things, that, under OEC 405(1),[3] "the state's attorney engaged in improper cross-examination of defense witnesses concerning the character of defendant for sexual propriety." In a letter opinion denying the motion, the trial court primarily faulted trial counsel's response to the prosecutor's questions, noting that counsel had failed to "ask the court for a hearing outside the presence of the jury" and that the objection that counsel did make "did not adequately apprise the court of the basis for his objection about the one specific instance of conduct or that the objection was meant to challenge all questions *232 concerning all specific instances of conduct." The court also noted that, in its view, the facts established that the prosecutor had a good faith basis for the questions.[4]
Thus, the criminal trial court entered a judgment of conviction. On direct appeal, we affirmed without opinion and the Supreme Court denied review. State v. Holbrook , 196 Or. App. 353, 103 P.3d 1211 (2004), rev. den. , 338 Or. 681, 115 P.3d 246 (2005).
Meanwhile, the Bar instituted a proceeding against the prosecutor. As we described it in Holbrook I , the Bar alleged
"that the prosecutor's questions to Millette and Chubb on cross-examination violated Code of Professional Responsibility Disciplinary Rule (DR) 7-106(C)(1).[5 ] The Bar trial panel found that the prosecutor's questions were improper under a court-made corollary to OEC 405(1) because the prosecutor 'did not have a good faith belief that [petitioner] had actually engaged in the conduct in question.'
*294 In re Tichenor , 340 Or. 108, 111-12, 129 P.3d 690 (2006) (internal quotation marks omitted). The Bar trial panel then concluded that, on that basis, the prosecutor had violated DR 7-106(C)(1). Tichenor , 340 Or. at 112, 129 P.3d 690."
Holbrook I , 254 Or. App. at 554-55, 297 P.3d 482 (footnote omitted).
On review, the Supreme Court disagreed with the Bar trial panel. The court held that DR 7-106(C)(1) does not apply to cross-examination questions about specific instances of conduct posed to character witnesses because *233 OEC 405(1) and its corollary do not require such questions to be supported by admissible evidence, whereas DR 7-106(C)(1) applies only when such support is required. Tichenor , 340 Or. at 116, 129 P.3d 690. Accordingly, the Supreme Court dismissed the Bar's complaint against the prosecutor without considering whether the prosecutor had violated the corollary to OEC 405(1). Id.
B. Post-Conviction Proceedings and First Post-Conviction Appeal
After his conviction was affirmed on appeal, petitioner sought post-conviction relief. In his petition, he alleged, among other things, that trial counsel had performed inadequately under Article I, section 11, and the Sixth Amendment by failing "to make attempt to prevent the state from introducing improper character impeachment. * * * Counsel should have, at the very least, moved for a hearing outside jurors' presence." In support of that allegation, petitioner sought to introduce testimony by his trial counsel before the Bar trial panel about what counsel knew and believed at the time of petitioner's second trial. The post-conviction court held that that evidence was irrelevant, excluded it, and rejected all of petitioner's claims.
On appeal, we reversed, holding that trial counsel's testimony before the Bar should have been admitted in the post-conviction proceeding and that the post-conviction court's error in excluding it was not harmless. Holbrook I , 254 Or. App. at 551, 297 P.3d 482. We remanded for a new post-conviction trial on the allegation quoted above.
C. Post-Conviction Proceedings on Remand
On remand, the post-conviction court conducted a trial on that allegation. The trial was conducted mainly on documentary evidence, but petitioner also presented telephonic testimony from Professor Laird Kirkpatrick, who opined, among other things, that the prosecutor lacked a good-faith basis for the cross-examination questions because his information was insufficiently reliable. Kirkpatrick also testified that references to prior misconduct by a defendant make juries much more likely to convict, citing studies using *234 mock jurors in which "the conviction rate jumps up dramatically when you bring in prior-bad-act evidence."[6]
In a detailed letter opinion, the post-conviction court held that trial counsel had failed to perform adequately but that that inadequate performance had not prejudiced petitioner. The court did not decide whether the prosecutor had violated the corollary to OEC 405(1) by cross-examining petitioner's character witnesses about events and suspicions that Carpenter had described to the prosecutor based on statements that she contended that Holbrook had made to her. It noted that the law was unclear on that question, but it held that, at the time of petitioner's second trial, the argument that the prosecutor had violated the corollary to OEC 405(1) was "colorable" and "reasonable given the facts and current state of the law." The court noted that "[a]pplication of the rule so obviously offers possible benefits to a defendant that any lawyer exercising reasonable professional skill and judgment would assert" an available colorable argument for its application. "By the time of the second trial, trial counsel was well aware of the basis of the prosecutor's information." Consequently, "[t]rial counsel, in the exercise of reasonable professional skill and judgment, should have taken steps to attempt to exclude this information *295 before trial and should have objected to the prosecutor's cross-examination questions because it was clear the prosecutor's source had no firsthand knowledge of the reported behavior." The court held that trial counsel had performed inadequately in failing to move in limine to prevent the questioning, failing to sufficiently object to the questions, and failing to request a hearing outside the presence of the jury.
Nevertheless, the post-conviction court concluded that petitioner had not been prejudiced by that inadequate performance. The court acknowledged certain factors that supported a determination that counsel's inadequate performance prejudiced petitioner:
• The verdict was nonunanimous.
• There was no physical evidence of abuse.
*235 • The case "turn[ed] exclusively on credibility findings" about petitioner and the victim.
• "[T]he type of impeachment questions asked during petitioner's trial have a significant tendency to affect juror decisions in a way that is adverse to a [criminal] defendant."
Nonetheless, the court decided that the factors leaning in the other direction-against a determination of prejudice-demonstrated that petitioner had not suffered prejudice. The court identified the following factors:
• The court found that "[t]he jury was advised several times that statements by counsel had no evidentiary value" and that "[t]he trial court instructed the jury specifically on the issue of the impeachment questions."
• "[P]etitioner's own conduct at trial provided a substantial basis for the jury to question his credibility."
• "Review of the transcript also reveals that much of the information which formed the basis for the prosecutor's cross examination questions was received as substantive evidence during the testimony of Elizabeth Carpenter."
The court ruled that those circumstances, in combination, "make it unlikely that the cross-examination questions had a tendency to affect the outcome of petitioner's trial."
D. Arguments on Appeal
As noted above, the only question on appeal is whether the inadequacies that the post-conviction court identified in trial counsel's performance prejudiced petitioner. Petitioner contends that they did. In his view, the prosecutor lacked a reasonable basis for the disputed cross-examination questions, and the post-conviction court was mistaken in reasoning that the trial court's instructions, petitioner's conduct at trial, and Carpenter's testimony prevented trial counsel's inadequate performance from tending to affect the result of the prosecution. The superintendent contends that the prosecutor did have a reasonable basis *236 for the cross-examination questions and defends the post-conviction court's reasoning regarding prejudice.
As explained below, we conclude that the prosecutor lacked a reasonable basis for his questions about petitioner's purported inappropriate relationship with an underage girl. Moreover, we disagree with the post-conviction court that the jury instructions, petitioner's conduct, or Carpenter's testimony eliminated the prejudice from trial counsel's inadequate failure to prevent or remedy the impermissible cross-examination.
II. ANALYSIS
A. Legal Framework for Post-Conviction Relief
"Post-conviction relief is warranted when there has been a 'substantial denial' of 'rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.' " Lichau v. Baldwin , 333 Or. 350, 358, 39 P.3d 851 (2002) (quoting ORS 138.530(1)(a) ). Article I, section 11, provides criminal defendants with the right to counsel. "[T]he defendant's right is not just to a lawyer in name only, but to a lawyer who provides adequate assistance." Montez , 355 Or. at 6, 322 P.3d 487 (internal quotation marks omitted). Thus, Article I, section 11, requires " 'adequate performance by counsel' concerning the 'functions of professional assistance which an accused person *296 relies upon counsel to perform on his behalf.' " Id. (quoting Krummacher v. Gierloff , 290 Or. 867, 872, 627 P.2d 458 (1981) ).
To obtain post-conviction relief because of inadequate assistance of counsel, a petitioner must show, "by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result." Trujillo v. Maass , 312 Or. 431, 435, 822 P.2d 703 (1991). As noted above, here, the post-conviction court determined, and it is undisputed on appeal, that trial counsel performed inadequately by failing to challenge the prosecutor's cross-examination questions of Millette and Chubb. The only question is whether petitioner was prejudiced by that failure. The legal question is thus whether trial counsel's *237 omissions "could have tended to affect the outcome of the case." Green v. Franke , 357 Or. 301, 323, 350 P.3d 188 (2015) (emphasis and internal quotation marks omitted).
B. Prejudice
1. Reasonable basis for the cross-examination questions
We begin by considering whether the prosecutor violated the corollary to OEC 405(1) by questioning Millette and Chubb about suspicions of Holbrook that had been related to him secondhand by Carpenter. If the questions did not violate the corollary to OEC 405(1), then, even if the post-conviction court's reasoning with respect to prejudice was incorrect, petitioner would have suffered no prejudice from counsel's inadequate performance because the prosecutor would have been entitled to cross-examine petitioner's character witnesses as he did; consequently, counsel's efforts to prevent the questioning would not have succeeded.
As explained below, we conclude that the prosecutor lacked a reasonable basis for his cross-examination questions regarding petitioner's purported inappropriate relationship with a young female student, and we further conclude that counsel's failure to prevent or remedy those questions prejudiced petitioner. Consequently, we need not, and do not, consider whether the prosecutor had a reasonable basis for the rest of the disputed cross-examination questions.
As noted above, the criminal trial court ruled, and it is not disputed in the post-conviction proceeding, that, as a criminal defendant, petitioner was entitled to present witnesses to testify to his "pertinent" character trait of sexual propriety. See OEC 404(2)(a) (evidence of a person's character is admissible "for the purpose of proving that the person acted in conformity therewith on a particular occasion" when it is "[e]vidence of a pertinent trait of character offered by an accused"); Enakiev , 175 Or. App. at 596, 29 P.3d 1160 ("sexual propriety" is a pertinent character trait in a prosecution for a sex crime).
The form in which character evidence may be presented is governed by OEC 405(1), which provides:
*238 "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."[7]
Here, on direct examination, petitioner's character witnesses testified to their opinions that he had the character trait of sexual *297 propriety, and there is no dispute that that complied with the first sentence of OEC 405(1). Thus, the parties' dispute turns on the second sentence, relating to cross-examination.
The purpose of allowing cross-examination regarding specific instances of conduct is to test the basis for the witness's opinion of a defendant's character or, in the case of reputation testimony, the witness's knowledge of the defendant's reputation. See, e.g. , State v. Kendrick , 31 Or. App. 1195, 1200, 572 P.2d 354 (1977), rev. den. , 282 Or. 385 (1978) (purpose of such cross-examination is "to test the witness's knowledge of the other's reputation and the reliability of his report of that reputation"). Consequently, "[r]egarding reputation testimony, a cross-examiner is entitled to attempt to cast doubt upon the witness's foundation of knowledge for testifying by showing that the witness has not heard something that one familiar with defendant's reputation ordinarily would have heard." Rogers v. United States , 566 A.2d 69, 78 (D.C. 1989). However, "[t]he situation is different regarding opinion character testimony." Id. There, "[t]he issue is not whether the witness has heard what is available to be heard about defendant, but whether the witness's *239 opinion has taken into account a fact actually present in [the defendant]'s background, e.g. , a previous arrest or bad act." Id. If not, "the worth of the witness's opinion is called into question." Id.[8]
The Supreme Court has explained that Oregon, like a majority of other jurisdictions, recognizes a common-law "corollary" to the second sentence of OEC 405(1). Tichenor , 340 Or. at 112-13, 129 P.3d 690. The corollary limits the "relevant specific instances of conduct" that may be raised on cross-examination of a character witness to specific instances for which the cross-examiner has "a reasonable or good-faith basis to believe that the mentioned conduct occurred." Id. at 114-15, 129 P.3d 690.
*240 The corollary to OEC 405(1) is necessary because the rule allowing the prosecutor to refer to prior misconduct of the defendant "is replete with possibilities for prejudice." Kenneth S. Broun, 1 McCormick on Evidence § 191, 1065 (7th ed. 2013); see also, e.g. , Michelson v. United States , 335 U.S. 469, 481, 69 S.Ct. 213, 93 L. Ed. 168 (1948) (noting the trial court's obligation to ensure that the prosecutor is not "asking a groundless question to waft an unwarranted innuendo into the jury box"); State v. Bateham , 94 Or. 524, 531-32, 186 P. 5 (1919) (asking unfounded *298 questions about a defendant's prior misconduct "would be beneath the dignity of any practicing lawyer" and "should lead to a reversal"); Kendrick , 31 Or. App. at 1200, 572 P.2d 354 ("It is recognized * * * that this cross-examination technique is fraught with danger of undue prejudice and requires close supervision."); United States v. Krapp , 815 F.2d 1183, 1186 (8th Cir.), cert. den. , 484 U.S. 860, 108 S.Ct. 174, 98 L.Ed.2d 127 (1987) ("[U]nless circumscribed by rules of fairness and grounded in demonstrated good faith on the part of the prosecution, the result could be most prejudicial to the defendant and make for a miscarriage of justice." (Internal quotation marks omitted.)).
As explained above, in Tichenor , the Supreme Court did not decide whether the prosecutor in petitioner's criminal trial (who was the accused in the Bar proceeding) had a reasonable or good faith basis for the cross-examination questions. Instead, the court held that, regardless of exactly what constitutes a reasonable or good-faith basis to believe that the conduct occurred, the Bar's view of DR 7-106(C)(1) was incorrect because the cross-examiner does not need to have admissible evidence sufficient to prove that the conduct occurred:
"[The corollary to OEC 405(1) ] does not require that [a cross-examiner] be able to offer admissible evidence to prove that the conduct occurred. See, e.g. , Troutman [v. Erlandson] , 279 Or. [595, 604, 569 P.2d 575 (1977) ] (requiring only good-faith basis); State v. Bateham , 94 Or. 524, 531, 186 P. 5 (1919) (requiring 'foundation within [lawyer's] knowledge or information'); cf. State v. Doris , 51 Or. 136, 159, 94 P. 44 (1908) (cross-examination regarding community rumors permissible to impeach reputation testimony on defendant's good character). As one treatise has explained, the good-faith basis test *241 " 'does not require that proof of the specific act be admissible under the rules of evidence, for the obvious reason that the act is not being admitted as a fact. Consequently, the good faith basis test has often been met through hearsay statements of law enforcement officers implicating the defendant in criminal activity.'
"Stephen A. Saltzburg, Daniel J. Capra, and Michael M. Martin, 2 Federal Rules of Evidence Manual § 405.02[5] at 405-08 (8th Ed 2002)."
Tichenor , 340 Or. at 115, 129 P.3d 690. In a footnote, the court noted that the ultimate question is whether the cross-examiner's basis for believing that "the mentioned conduct occurred," id. , is sufficiently reliable to permit him or her to imply to the jury that the defendant has engaged in the conduct:
"Put another way, the question under the corollary to OEC 405(1) is whether the evidence is reliable, not whether it is admissible. Although admissible evidence usually will be reliable, the fact that the evidence is not admissible does not preclude it from being reliable, for purposes of the corollary to OEC 405(1)."
Id. at 115 n. 5, 129 P.3d 690.
Information that is sufficiently reliable includes, as the court noted in Tichenor , hearsay statements of law enforcement officers who have personal knowledge of the defendant's prior misconduct. Cf., e.g. , United States v. Alvarez , 860 F.2d 801, 828 (7th Cir. 1988), cert. den. , 490 U.S. 1051, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989) (adequate factual basis existed to cross-examine a defense character witness about the defendant's involvement in breaking her husband out of prison where the defendant had confessed to an FBI agent that she had provided her husband with money to facilitate the escape and the prosecution provided an affidavit to that effect from the FBI agent); United States v. Nixon , 777 F.2d 958, 970-71 (5th Cir. 1985) (United States Attorney's belief in the defendant's prior misconduct was reasonable where she relied, in part, on statements by state police officers that the defendant had transported cocaine on a bus). It also includes facts that can be inferred from documentary evidence. Cf., e.g. , United States v. Bright , 588 F.2d 504, 512 (5th Cir.), cert. den. , *242 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979) (government's proffer of a letter of reprimand from state bar and offer to prove facts underlying reprimand showed good-faith basis for cross-examination *299 question about bar reprimand); accord United States v. Bruguier , 161 F.3d 1145, 1150 (8th Cir. 1998) ("[T]he fact inquired about in the present case-whether a public agency had made a specific finding [of child neglect]-can easily be verified. The same is not true about the accusation that a certain person lied to a grand jury, where there has been no independent judicial inspection of whether a lie was told, and where the person accused of lying was never indicted for his allegedly perjurious conduct.").
Professors Mueller and Kirkpatrick describe the standard as follows:
"[T]he cross-examiner need not be prepared to prove beyond a reasonable doubt or even by a preponderance that the acts or behavior occurred, but he must have the sort of basis that would lead a reasonable person to think they probably occurred. If the cross-examiner knows from prior conversations with the person whose character is being attested that he himself has said the acts or behavior occurred, that is surely basis enough. If the cross-examiner knows that the person was convicted or even formally charged with the acts or behavior in question, that is enough too. On the other hand, it should not be enough that a single biased source has alleged that certain acts or behavior occurred, if the cross-examiner also knows that others deny these points , and it should not be enough if the cross-examiner knows that the acts or conduct in question led to charges that were dropped for lack of evidence."
Christopher B. Mueller and Laird C. Kirkpatrick, 2 Federal Evidence § 4.43, 31 (4th ed. 2013) (emphasis added). Similarly, Professor McCormick indicates that "[r]easonable grounds would require * * * that the prosecutor's assurance be based on the statements of witnesses, believed to be credible, who purport to have firsthand knowledge." Edward W. Cleary, McCormick on Evidence § 191, 458 (2d ed. 1972).
Here, the prosecutor lacked reliable information that petitioner had engaged in an illicit correspondence with *243 "a little girl." The prosecutor's information came from conversations with Carpenter in which she relayed information about Holbrook's suspicions that Carpenter asserted that Holbrook had communicated to her. Initially, Carpenter told the prosecutor that Holbrook had been "concerned" and "suspected" that petitioner "had been involved with a female student at the school where he was a teacher." The only noted basis for that suspicion was that "there were letters sent to a post office box to which Ms. Holbrook was not allowed access." At the second trial, Carpenter testified that Holbrook had said that she "was not allowed to have a key to the post office box" and that she "was sure there were some letters coming from a young girl." The prosecutor knew that Holbrook denied making any statements about her suspicions and denied the truth of the accusations.
The prosecutor had acknowledged that the accusation that petitioner had had an inappropriate relationship with a student was merely a rumor; he explained to the Bar that "[t]here was no evidence to support the suspicion voiced to Mrs. Carpenter by her sister." He had tried, and failed, to corroborate the accusation regarding the student; he informed the Bar that, "[a]s far as I was able to determine, it was an unconfirmed suspicion."
We note two problems with the prosecutor's information. First, the source of that information was Carpenter, who was a key witness in the state's case based on her personal involvement in the events at issue and whose family relationships had been significantly affected by differing views of petitioner's guilt.[9] Particularly under circumstances where the purported declarant-Holbrook-denied making the statements and denied the underlying assertions, the fact that the source of the prosecutor's hearsay information had a reason to lie regarding whether the hearsay statements were made at all, or, if they were made, to embellish *300 their contents, weighs strongly against the conclusion that *244 the information is sufficiently reliable to allow the prosecutor to imply to the jury that it is fact.[10]
Second, and, in our view, conclusively, Holbrook's hearsay statements to Carpenter (assuming that they were made and reported accurately) were of concern and suspicions-not knowledge-and the only known basis for them was equivocal: petitioner's denial of post-office-box access to Holbrook. As we have explained, and as the Supreme Court held in Tichenor , before cross-examining a character witness about prior misconduct, the cross-examiner must have "a reasonable or good-faith basis to believe that the mentioned conduct occurred. " 340 Or. at 115, 129 P.3d 690 (emphasis added). A concern, suspicion, or belief that the conduct happened, without explanation or support apart from an act as equivocal as withholding access to a post-office box, does not indicate with any degree of reliability that the conduct occurred. Thus, the prosecutor lacked reliable information to support a reasonable belief that petitioner had committed the misconduct. That conclusion is even clearer where, as here, the prosecutor investigated the suspicion and could not corroborate it.
Under these circumstances, the prosecutor lacked a reasonable basis for believing that petitioner had an improper relationship with a student. Accordingly, if trial counsel had properly sought to prevent or remedy the prosecutor's questions about the alleged relationship with a student, his argument would have been meritorious.
*245 2. Post-conviction court's prejudice analysis
Having concluded that an argument that the questions about petitioner's relationship with a student or "a young girl" were improper would have been meritorious, we turn to the post-conviction court's reasons for concluding that the improper questions did not prejudice petitioner.
As we have noted, cross-examination with specific instances of misconduct is "replete with possibilities for prejudice." Broun, McCormick on Evidence § 191 at 1064 ; see also, e.g. , Michelson , 335 U.S. at 481 n. 18, 69 S.Ct. 213 (noting that, "[f]rom this permissible inquiry about reports of [a prior] arrest, the jury is pretty certain to infer that defendant had in fact been arrested and to draw its own conclusions as to character from that fact"); Kendrick , 31 Or. App. at 1200, 572 P.2d 354 ("The rumor of the misconduct when admitted, goes far, in spite of all theory and of the judge's charge, toward fixing the misconduct as a fact upon the other person[.]" (Quoting John Henry Wigmore, Evidence § 988 (3d ed. 1970).)). Absent some strong countervailing legal consideration, counsel's failure to raise and preserve a meritorious argument against the prosecutor's questions implying that petitioner had had an inappropriate relationship with a young female student had more than a possibility of affecting the outcome of the proceeding, given the inflammatory nature of the implied conduct and its similarity to the charged conduct, as well as the facts that the trial was a credibility contest and that it was a very close case.
The post-conviction court gave three reasons for its contrary conclusion: First, the criminal trial court instructed the jury about the questioning; second, petitioner's conduct at trial provided reason for the jury to question his credibility; and, third, Carpenter later *301 testified in detail about Holbrook's statements to her. At the outset, we note that petitioner's conduct at trial was not out of the ordinary, and it could not have prevented the improper cross-examination from tending to affect the verdict. We address the other two reasons in turn and conclude that neither of them prevented trial counsel's inadequate performance from prejudicing petitioner. *246 a. Jury instructions
The post-conviction court noted three instructions to the jury that, in its view, would have limited the jury's use of the prosecutor's improper cross-examination questions. We generally presume that juries follow the court's instructions. State v. Bowen , 340 Or. 487, 511, 135 P.3d 272 (2006) ("Jurors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so." (Internal quotation marks omitted.)). Thus, the post-conviction court reasoned, the fact that the trial court properly instructed the jury on a limited purpose for which it could consider the questions would have prevented the verdict from being affected by the questions.
The court cited, first, a general instruction that the trial court gave about the attorneys' assertions in their opening statements and, second, an instruction, made after an objection by the state in response to trial counsel's cross-examination of a state's witness, that counsel's statements, alone, "have no evidentiary value," that is, "unless there's a response to it, it means nothing." Neither of those instructions had any bearing on how the jury would have regarded the exchanges between the prosecutor and Millette and Chubb regarding petitioner's purported relationship with a student, and we do not discuss them further.
The third instruction did relate directly to the improper cross-examination questions. The day after Millette and Chubb testified and were cross-examined, petitioner presented testimony from Holbrook during which she denied having made the statements on which the cross-examination questions were based. After her testimony, the trial court instructed the jury as follows:
"People can come * * * in and give an opinion about somebody's particular character trait. And that has been done in relation to [petitioner] about sexual probity.
"The reason that's allowed is that the Court will give you an instruction at the end of the case that tells you when-how to evaluate witnesses.
"And one of the factors that it mentions, among others, and it's not limited to those, is the character of a person.
*247 "So this talks about opinions about sexual probity, and then [the prosecutor's] questions about, well, did you know this or this or this, and then the questions, for instance, that were asked of Mrs. Holbrook about, well, did that or didn't it happen, don't relate to anything else except that one thing, the character trait. And it doesn't relate to anything else.
"And you can consider that, obviously, in your evaluation of the evidence as to whether somebody did something.
"It's not a big discussion area other than it relates to whether or not you can consider that in determining whether [petitioner]'s guilty or not guilty. But other than that, it's just limited to that purpose.
"And the reason I'm just going into this, I don't want that going beyond that part to where it becomes a discussion factor other than as it relates to that-the issue. And that issue, again, you can consider it in relation to whether he's guilty or not guilty, but that's the only issue you can consider it for."
For two reasons, we conclude that that instruction did not prevent the improper cross-examination from prejudicing petitioner. First, as explained above, the prosecutor's questions were improper for any purpose. Consequently, regardless of whether the trial court's limiting instruction might have caused the jury to consider petitioner's purported relationship with a student only for a limited purpose, the limited purpose was nonetheless improper.[11] The only instruction that would *302 be correct would be one that instructed the jury not to consider those questions at all.
Second, the instruction was ambiguous with respect to whether the jury could consider the conduct implied in the questions as affirmative evidence of petitioner's bad *248 character. Thus, even assuming that petitioner would not have been prejudiced if the jury had been clearly and correctly instructed to use the cross-examination questions only to evaluate the character witnesses' credibility, petitioner still suffered prejudice. Instead, the instruction left open the possibility that the jury could consider the conduct implied on cross-examination to support the inference that petitioner had a propensity to engage in sexual impropriety with young girls.
The "touchstones" of appellate evaluation of jury instructions are "legal accuracy and clarity." Estate of Michelle Schwarz v. Philip Morris Inc. , 348 Or. 442, 454-55, 235 P.3d 668, adh'd to on recons, 349 Or. 521, 246 P.3d 479 (2010) ("Although it is possible that a jury could glean [a complex legal] distinction from defendant's proposed instructions in combination with the uniform jury instruction, it is not probable. * * * When the law draws a line between the proper and improper use of evidence, a jury instruction must be equally explicit in describing what falls on each side of that line."); see also Williams et al. v. Portland Gen. Elec. , 195 Or. 597, 610, 247 P.2d 494 (1952) ("The parties to any jury case are entitled to have the jury instructed in the law which governs the case in plain, clear, simple language. * * * Everything which is reasonably capable of confusing or misleading the jury should be avoided."). Where the law is complex, it is even more important to instruct in clear and simple terms.
Here, the court instructed the jury that the cross-examination questions "don't relate to anything else except that one thing, the character trait." While the instruction was likely intended to limit the jury's use of the questions to the credibility of the character witnesses' opinions of petitioner's character, that limitation was not explicit or clear. Instead, the instruction that the court gave is certainly confusing and likely misleading. Given that, it would not have prevented the jury from using the prosecutor's references to petitioner's purported relationship with a young female student as affirmative evidence of his character for sexual impropriety. Thus, it does not change our conclusion that petitioner was prejudiced by counsel's inadequate performance.
*249 b. Carpenter's testimony
Finally, we consider the post-conviction court's third reason for concluding that trial counsel's inadequate performance did not prejudice petitioner, namely, that the jury heard the same information through Carpenter's testimony. As background for our consideration of that issue, we first set out more information about the evidence presented at the second trial.
As noted above, petitioner's first two character witnesses, Millette and Chubb, testified during a break in the prosecution's case. At that point, Carpenter and 10 other prosecution witnesses had already testified. After Millette and Chubb testified, and were improperly cross-examined, the prosecution presented six additional witnesses and then rested. The defense then presented evidence. After brief testimony from Liz Carpenter's husband, Scott Carpenter, the defense presented testimony from Holbrook.
On direct examination, defense counsel asked Holbrook about the statements on which, as he knew, the prosecutor had relied in his cross-examination of Millette and Chubb. Defense counsel began by asking about Holbrook's separation from petitioner, which occurred several months before they divorced. He then asked whether Holbrook *303 and petitioner had any agreement about having relationships with other people while they were separated, but before they divorced. The prosecutor objected, contending that the question related only to character and was an attempt to show a specific instance rather than reputation or opinion. The court disagreed, noting that "[t]he purpose of the question is to relate to what you were cross-examining on." The court expressed concern that "I'm not too sure how much you can bring up to counter the cross-examination," but nevertheless overruled the objection and told Holbrook to answer the question "briefly and simply." Defense counsel proceeded to ask Holbrook about all of the other topics of the cross-examination-hickeys, the post-office box, and her purported suspicion that petitioner had a relationship with a student-and Holbrook denied having such suspicions or ever making any statements on those subjects to her sister. *250 On cross-examination, the prosecutor asked Holbrook whether she remembered making statements to Carpenter about her suspicions at particular times. Holbrook maintained that she had never had any suspicions or made any statements about sexual misconduct by petitioner.
After Holbrook's testimony, at the end of the day, the court gave the limiting instruction discussed above. See 289 Or. App. at 246-47. The next morning, the court explained to the jury as follows:
"[The prosecutor]'s got two witnesses that he's going to call out of order. We're in the defense case now, but [the prosecutor] is calling two witnesses out of order because they're not going to be available. And they related to the-they're rebuttal witnesses, and they relate to Mrs. Holbrook's testimony. So it's convenient to call them now to have some continuity to that. And then we'll go back to the defense case."
The prosecution called Scott Carpenter to testify briefly and then recalled Liz Carpenter. She testified in more detail about the statements that she said Holbrook had made to her relating her suspicions about petitioner:
"[PROSECUTOR]: In 1995 was Linda Holbrook at your house while the defendant was in the Hood to the Coast run?
"[CARPENTER]: Yes, she was.
"[PROSECUTOR]: Did you have conversations with her about her relationship with the defendant?
"[CARPENTER]: Yes.
"[PROSECUTOR]: What did she tell you her concerns were about the defendant's behavior?
"[CARPENTER]: She was quite upset. Their marriage wasn't doing very well, and she had said he was away a lot on the weekends and at night getting home late. And particularly one weekend he had funny marks on his stomach that he said were allergic reaction, but she believed they were hickeys.
"[PROSECUTOR]: Did she describe to you anything about a post office box that she did not [have] access to?
*251 "[CARPENTER]: During that conversation in '95, she-that was when she brought up her suspicions. She was crying heavily while she was telling us all of this, and that she was not allowed to have a key to the post office box.
"[PROSECUTOR]: Did she say anything about letters from a juvenile?
"[CARPENTER]: She was sure there were some letters coming from a young girl, yes."
Carpenter also described statements that Holbrook made about an incident that took place while Holbrook and petitioner were separated but before they were divorced, when Holbrook discovered another woman in petitioner's apartment.
As explained above, the post-conviction court concluded that petitioner was not prejudiced by counsel's inadequate failure to anticipate or remedy the improper cross-examination questions because the jury heard the same allegations, in more detail, from Carpenter in that rebuttal testimony. We disagree that Carpenter's testimony demonstrates that trial counsel's inadequate performance did not tend to affect the verdict.
*304 "Not all lapses of professional skill and judgment entitle a defendant to post-conviction relief. Instead, only those acts or omissions by counsel which have a tendency to affect the result of the prosecution can be regarded as of constitutional magnitude." Stevens v. State of Oregon , 322 Or. 101, 110, 902 P.2d 1137 (1995) (emphasis in original; internal quotation marks omitted). In evaluating whether an act, or failure to act, by trial counsel has a tendency to affect the result of the prosecution, a post-conviction court must consider the evidence that would have been presented at trial if counsel had performed adequately. See, e.g. , Lichau , 333 Or. at 363, 39 P.3d 851 (where post-conviction court found that trial counsel would have proceeded with an alibi defense if he had known of evidence that would have been discovered through adequate investigation, "the prejudice inquiry * * * must proceed from the premise that the jury would have heard the alibi evidence that petitioner presented at the post-conviction hearing"). The determination of what evidence would have been presented is a finding of fact, and, consequently, we *252 are bound by the post-conviction court's findings if they are supported by evidence in the record. Id. at 359, 39 P.3d 851.
Here, the post-conviction court found that trial counsel performed inadequately in failing to take issue, either before trial (through a motion in limine ) or during trial (through objections and a request for a hearing), with the prosecutor's references to petitioner's prior sexual misconduct. The post-conviction court's findings envision one of two outcomes if counsel had raised his objection: Either the trial court would have prohibited the questioning, or the court would have allowed the questioning but counsel would have preserved the issue for appeal. As explained above, the questioning regarding petitioner's purported inappropriate relationship with a young female student was improper. Thus, if counsel had performed adequately, either the trial court would have correctly prohibited it or, on appeal, we would have held that the trial court erred in allowing it. As explained below, in either of those situations, Carpenter's testimony would not have prevented adequate performance-in the form of a motion in limine or proper objections and a request for a hearing-from tending to affect the outcome of the prosecution.
We begin by considering what would have happened if counsel had performed adequately and the criminal trial court had granted the motion in limine or sustained the objection. If that had happened, the prosecutor would have been prohibited from cross-examining Millette and Chubb with the allegations of prior misconduct. The evidence in the record is insufficient to support a finding that, in the absence of the improper cross-examination, Carpenter's testimony would have been proffered, let alone admitted.
As demonstrated by the events at trial, defense counsel's questioning of Holbrook about her suspicions and statements about previous sexual misconduct by petitioner-more precisely, about her lack of suspicions and statements on that subject-was motivated by the prosecutor's cross-examination of Millette and Chubb. The criminal trial court recognized that when it told the prosecutor that the purpose of defense counsel's question to Holbrook about her agreement with petitioner about seeing other people after their *253 separation was "to relate to what you were cross-examining on." Moreover, there is no other reason that defense counsel would have questioned Holbrook about extramarital affairs, hickeys, the post-office box, and a relationship with a student-prior misconduct of counsel's client that the witness denied had happened.
As the criminal trial court stated in its explanation to the jury, the prosecution recalled Carpenter as a "rebuttal witness" whose testimony "relate [d] to Mrs. Holbrook's testimony." That is, in response to defense counsel's presentation of Holbrook's testimony that she had never made those statements, the prosecutor took the opportunity to present Carpenter's testimony about Holbrook's statements to her.
That opportunity would not have existed if the prosecutor had not improperly cross-examined Millette and Chubb. The first time he called Carpenter, before the testimony by Millette and Chubb, the prosecutor did not attempt to present Carpenter's testimony *305 about Holbrook's suspicions about petitioner's prior sexual misconduct. The record compels a finding that he would not have recalled Carpenter to testify to those things on rebuttal if not for the intervening improper cross-examination and Holbrook's testimony. Thus, if trial counsel had performed adequately by raising the issue before or during trial and the trial court had prohibited the improper cross-examination, the jury would not have heard Carpenter's testimony.
As noted above, the second possibility contemplated by the post-conviction court's findings is that, despite defense counsel's motion in limine or objection to the cross-examination, the trial court would have allowed the cross-examination. In that event, the post-conviction court found, counsel would have made a record and preserved the issue for appeal.
The situation on appeal would be as follows: Trial counsel moved in limine or objected and requested a hearing to prevent the prosecutor from cross-examining defense character witnesses about petitioner's purported prior sexual misconduct, and the trial court denied the motion or overruled the objection. As we have explained, that would have been error.
*254 Holbrook and Carpenter's subsequent testimony, even if it had still been presented, would not have rendered that error harmless. When a party objects to the admission of evidence and the trial court overrules the objection, the party retains the " 'right to meet its opponent's evidence admitted under the trial court's rulings.' " State v. McGinnis , 335 Or. 243, 248, 64 P.3d 1123 (2003) (quoting McCathern v. Toyota Motor Corp. , 332 Or. 59, 70, 23 P.3d 320 (2001) ). Consequently, " '[a]fter making the proper objections, a party may counter its opponent's evidence, whether correctly admitted or not, without waiving its evidentiary objection on appeal.' " Id. (quoting McCathern , 332 Or. at 70, 23 P.3d 320 ). That is true in criminal cases as well as civil ones. Id. at 251, 64 P.3d 1123.
Here, if counsel had sought to prevent the cross-examination questions and the trial court had nonetheless allowed them, defense counsel would have been exercising the right to meet the opponent's evidence admitted under the trial court's ruling when he presented Holbrook's testimony denying any basis for the rumors underlying the improper cross-examination. Carpenter's rebuttal testimony, which, as explained above, was presented to counter Holbrook's testimony that she had never made the accusations, would likewise have been a consequence of trial counsel's effort to meet the opponent's evidence admitted under the court's ruling. Consequently, on appeal, none of that testimony would have waived the evidentiary objection to the improper cross-examination.
Nor would it have rendered the improper cross-examination harmless. In McGinnis , the Supreme Court explained that a defendant's own testimony admitting the substance of statements that the defendant sought to exclude can render evidentiary error harmless because, "[w]hen a defendant testifies, * * * and admits the substance or truthfulness of the matters contained in the erroneously admitted evidence, the facts established by the in-court admissions may eliminate any harm associated with the erroneously admitted evidence." 335 Or. at 250, 64 P.3d 1123. The court contrasted that situation to the one in cases where evidence admitted to counter an opponent's evidence does not render the evidentiary error harmless because "the party challenging the evidence * * * does not concede the 'truthfulness' of *255 the challenged evidence, but offers evidence to rebut or discredit the challenged evidence." Id.
Here, Holbrook's testimony and Carpenter's rebuttal testimony did not amount to an admission of the substance or truthfulness of the basis for the prosecution's cross-examination questions. The goal of defense counsel's presentation of Holbrook's denial of any ground for the cross-examination questions was to "rebut or discredit the challenged [questions]." Id. , 64 P.3d 1123. The defense certainly did not concede the substance or truth of Carpenter's version of events, let alone the occurrence of the underlying conduct. Accordingly, had the question reached us on appeal, Holbrook's and Carpenter's testimony would not have provided a reason to hold that the trial court's evidentiary error was harmless. Thus, on appeal, we would *306 have reversed petitioner's conviction and remanded for further proceedings.
Carpenter's testimony did not prevent trial counsel's inadequate performance from tending to affect the outcome of the proceeding. If trial counsel had performed adequately, either the prosecutor would not have been permitted to ask the improper cross-examination questions at trial or petitioner would have received relief on appeal as a result of the trial court's error.
As explained above, the improper implication that petitioner had previously had an improper relationship with a young female student " 'could have tended to affect' the outcome of the case." Green , 357 Or. at 323, 350 P.3d 188 (quoting Lichau , 333 Or. at 365, 39 P.3d 851 (emphasis omitted)). Consequently, the post-conviction court erred in determining that trial counsel's inadequate performance did not prejudice petitioner. Petitioner is entitled to post-conviction relief.
Reversed and remanded.

Because we conclude that petitioner was entitled to post-conviction relief under Article I, section 11, we do not reach the question of prejudice under the Sixth Amendment.

Linda Holbrook and petitioner share the same last name. Throughout this opinion, we refer to Linda Holbrook as Holbrook and Bradley Holbrook as petitioner.

OEC 405(1) provides:
"In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."
As discussed further below, the cross-examination allowed by the second sentence of that provision is implicitly limited:
"Because of the significant potential for prejudice posed by that type of cross-examination, the courts have ruled that '[i]t is improper for [a lawyer] to cross-examine a character witness regarding prior instances of conduct when the [lawyer] does not have a reasonable basis for believing such conduct actually occurred.' Laird C. Kirkpatrick, Oregon Evidence § 405.04, Art IV-104 (4th ed. 2002); see Troutman v. Erlandson , 279 Or. 595, 602-03, 569 P.2d 575 (1977) (recognizing majority rule that lawyer must have 'good faith' belief that conduct occurred). Kirkpatrick regards this judge-made rule as a corollary of the right to cross-examine on specific instances of conduct under OEC 405(1). Kirkpatrick, Oregon Evidence § 405.04 at Art IV-104."
In re Tichenor , 340 Or. 108, 112-13, 129 P.3d 690 (2006) (brackets in Tichenor ).

The court concluded that the prosecutor had a good-faith basis for the questions because "there was nothing about Mrs. Carpenter's testimony that was unbelievable to the extent that the court could find a jury would, as a matter of law, have to disregard it." As discussed below, 289 Or. App. at 238-41, whether there is a reasonable or good-faith basis for such questions is a preliminary question for the court; it falls entirely outside the province of the jury. The ultimate question is whether the prosecutor's information is sufficiently reliable to justify reference to prior unproven misconduct by the defendant in front of the jury. Thus, the trial court's reasoning-that there was a good-faith basis for the prosecutor's questions as long as he had any kind of information from a witness whose testimony was not unbelievable as a matter of law-was incorrect.

That rule provided that, "[i]n appearing in the lawyer's professional capacity before a tribunal, a lawyer shall not * * * [s]tate or allude to any matter * * * that will not be supported by admissible evidence." Tichenor , 340 Or. at 113 n. 4, 129 P.3d 690.

At the post-conviction trial, the parties and the court treated the questions on which Kirkpatrick testified as susceptible to expert testimony.

The wording of OEC 405(1) is based on the wording of FRE 405(a). Legislative Commentary to OEC 405, reprinted in Laird C. Kirkpatrick, Oregon Evidence § 405.02, 265 (6th ed. 2013). FRE 405(a) now provides as follows:
"When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct."
Because the two provisions are functionally identical, the considerations underlying the judge-made corollary requiring a reasonable or good faith basis for cross-examination about specific instances of conduct are also the same. Accordingly, following the lead of the Supreme Court in Tichenor , 340 Or. at 115, 129 P.3d 690, we consider cases and treatises interpreting the corollary to FRE 405(a) as persuasive authority regarding the corollary to OEC 405(1).

Before enactment of the Federal Rules of Evidence in 1975 and the Oregon Rules of Evidence in 1981, the only form in which character evidence could be introduced under these circumstances was testimony about a person's reputation in the relevant community; the witness's personal opinion was inadmissible. See Michelson v. United States , 335 U.S. 469, 477, 69 S.Ct. 213, 93 L. Ed. 168 (1948) ("What commonly is called 'character evidence' is only such when 'character' is employed as a synonym for 'reputation.' The witness may not testify * * * that his own acquaintance, observation, and knowledge of defendant leads to his own independent opinion that defendant possesses a good general or specific character, inconsistent with commission of acts charged."); Legislative Commentary to OEC 405, reprinted in Kirkpatrick, Oregon Evidence § 405.02, 266 ("Where character is relevant as circumstantial evidence of some fact in issue * * * Oregon law has required proof by reputation evidence and disallowed evidence of either opinion or specific instances of conduct.").
Under the former rule, because the testimony related only to a defendant's good reputation, a character witness could be cross-examined as to community rumors about purported specific instances of conduct in order to "test the sufficiency of [the witness's] knowledge by asking what stories were circulating concerning events, such as one's arrest, about which people normally comment and speculate." Michelson , 335 U.S. at 479, 69 S.Ct. 213.
Nevertheless, even as to rumors, to "hold the inquiry within decent bounds," Professor Wigmore suggested, and the United States Supreme Court agreed, that, among other things, prosecutors should be able to demonstrate that the rumored event actually happened. Id. at 481 n. 18, 69 S.Ct. 213 ("[B]efore this relevant and proper inquiry can be made [into whether there had been talk or conversation about the defendant's being arrested], counsel must demonstrate privately to the court * * * the reality of arrest."); see also, e.g. , Tichenor , 340 Or. at 115, 129 P.3d 690 (OEC 405(1) requires the cross-examiner to have "a reasonable or good-faith basis to believe that the mentioned conduct occurred"); Michael H. Graham, 3 Handbook of Federal Evidence § 405:1, 759 n. 22 (8th ed. 2016) ("Even where the question inquires as to whether the reputation witness heard of a rumor, report, or arrest, a good faith basis as to the existence of the underlying event is best required; a good faith basis as to the existence of the rumor, report, or arrest should not be held to suffice.").

Testimony at the second trial indicated that Carpenter was no longer speaking with Holbrook, their mother, or a third sister as a result of her belief that petitioner was guilty and their belief that he was innocent. The prosecutor also described that disagreement between family members in his letter to the Bar.

The post-conviction court found that the prosecutor believed that Carpenter was credible and Holbrook was not. In our view, in order for information about a defendant's prior misconduct to be sufficiently reliable to allow reference to the conduct in front of the jury, more is required than the prosecutor's subjective belief in the truth of the information. The information must have objective hallmarks of reliability sufficient to justify the substantial risk that the jury will use the referred-to conduct as propensity evidence against the defendant. See Michelson , 335 U.S. at 481 n. 18, 69 S.Ct. 213 (noting that "the jury is pretty certain to infer that defendant had in fact been arrested and to draw its own conclusions as to character from that fact").
Thus, the fact that the prosecutor believed that Holbrook had made the statements does not demonstrate that his information was reliable. Rather, the fact that the prosecutor's information was subject to vigorous dispute and to believe it required in-depth evaluations of credibility demonstrates that it was not the kind of information on which it is fair to base unchallengeable allegations of prior misconduct to be made to the jury.

We express no opinion on whether the presumption that juries will follow their instructions applies in a situation, like this one, where courts have repeatedly acknowledged the substantial risk-or even likelihood-that juries will misuse the evidence. E.g. , Michelson , 335 U.S. at 481 n. 18, 69 S.Ct. 213 (noting that it is "pretty certain" that juries will use misconduct referred to on cross-examination as affirmative evidence of bad character); see also State v. Moore , 243 Or. App. 433, 440-41, 258 P.3d 1279 (2011) (where the jury's credibility assessment was decisive and the court admitted "unadulterated propensity evidence * * * of a particularly inflammatory nature," the court's error was not harmless despite a clear and correct limiting instruction).